UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x
:
CITY OF WESTLAND POLICE AND :
FIRE RETIREMENT SYSTEM, :
  :
  :
              Plaintiff, :
  :
  :
   v. : Case No. 1:12-cv-00256-LAK
  :
  :
  :
METLIFE, INC., et al., :
  :
             Defendants. :
  :
------------------------------------------------------------x


**REPLY MEMORANDUM IN FURTHER SUPPORT OF THE UNDERWRITER
DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT**


|  |  |
|---|---|
|  | Timothy E. Hoeffner |
|  | John J. Clarke, Jr. |
|  | Constance Tse |
|  | DLA Piper LLP (US) |
|  | 1251 Avenue of the Americas |
|  | New York, New York 10020-1104 |
|  | Tel.: (212) 335-4500 |
|  | Fax: (212) 335-4501 |
|  |  |
|  | Attorneys for Defendants |
|  |   Citigroup Global Markets Inc., Credit Suisse |
|  |   Securities (USA) LLC, Goldman, Sachs & |
|  |   Co., HSBC Securities (USA) Inc., Merrill |
| Dated: October 17, 2012 |   Lynch, Pierce, Fenner & Smith Incorporated |
|  |   and Wells Fargo Securities, LLC |

## **Table of Contents**

                                                                  **Page**

Table of Authorities ................................................................................................................ ii

PRELIMINARY STATEMENT ............................................................................................... 1

ARGUMENT – THE AMENDED COMPLAINT FAILS TO STATE A CLAIM
        AGAINST THE UNDERWRITER DEFENDANTS…………………………............ 3

I.    PLAINTIFF'S CLAIMS BASED ON IBNR ESTIMATES ARE
       NOT ACTIONABLE UNDER FAIT ............................................................................. 3

II.   THE OFFERING DOCUMENTS DISCLOSED REGULATORY
       INTERACTIONS AND THE RISKS TO METLIFE THAT
       COULD ARISE FROM THEM ..................................................................................... 7

III.  THE SECURITIES ACT CLAIMS ALSO SHOULD BE
       DISMISSED FOR THE REASONS STATED BY THE
       METLIFE DEFENDANTS ............................................................................................ 9

CONCLUSION ............................................................................................................................ 10

Table of Authorities

Page(s)

Cases

*Abu Dhabi Comm. Bank v. Morgan Stanley & Co. Inc.*,
 ___ F. Supp. 2d ___, 2012 WL 3584278 (S.D.N.Y. Aug. 17, 2012) ........................................5

*Acito v. IMCERA Group, Inc.*,
 47 F.3d 47 (2d Cir. 1995) ..........................................................................................................8

*Belmont Holdings Corp. v. SunTrust Banks, Inc.*,
 No. 1:09-cv-1185-WSD, 2010 WL 3545389 (N.D. Ga. Sept. 10, 2010) ..................................6

*Blackmoss Invs. Inc. v. ACA Capital Holdings, Inc.*,
 No. 07 Civ. 10528, 2010 WL 148617 (S.D.N.Y. Jan. 14, 2010)...............................................9

*Car Carriers, Inc. v. Ford Motor Co.*,
 745 F.2d 1101 (7th Cir. 1984) ...................................................................................................3

*City of Omaha, Nebraska Civilian Emp. Ret. Sys. v. CBS Corp.*
 679 F.3d 64 (2d Cir. 2012)................................................................................................ 1, 4-5

*Delta Holdings, Inc. v. Nat'l Distillers & Chem. Corp.*,
 945 F.2d 1226 (2d Cir. 1991)................................................................................................2, 7

*Denny v. Barber*,
 576 F.2d 465 (2d Cir. 1978).......................................................................................................8

*Fait v. Regions Fin. Corp.*,
 655 F.3d 105 (2d Cir. 2011)...............................................................................................1, 2, 4

*Fed. Hous. Fin. Agency v. UBS Americas, Inc.*,
 ___ F. Supp. 2d ___, 2012 WL 1570856 (S.D.N.Y. May 4, 2012)...........................................4

*In re Britannia Bulk Holdings Inc. Sec. Litig.*,
 665 F. Supp. 2d 404 (S.D.N.Y. 2009).......................................................................................9

*In re Deutsche Bank AG Sec. Litig.*,
 No. 09 Civ. 1714 (DAB), 2012 WL 3297730 (S.D.N.Y. Aug. 10, 2012) .............................5, 6

*In re General Elec. Co. Sec. Litig.*,
 856 F. Supp. 2d 645 (S.D.N.Y. 2012).......................................................................................6

*Lighthouse Fin. Group v. Royal Bank of Scotland Group, PLC*,
 No. 11 Civ. 398 (GBD), 2012 WL 4616958 (S.D.N.Y. Sept. 28, 2012) ..................................5

*NECA-IBEW Pension Trust Fund v. Bank of America Corp.*,
 10 Civ. 0440 (LAK) (S.D.N.Y. Mar. 16, 2012).........................................................................4

*Richman v. Goldman Sachs Group, Inc.*,
  ___ F. Supp. 2d ___, 2012 WL 2362539 (S.D.N.Y. June 21, 2012) ......................................... 9

*Telectronics Proprietary Ltd. v. Medtronic, Inc.*,
  687 F. Supp. 832 (S.D.N.Y. 1988) ........................................................................................... 3

*Virginia Bankshares v. Sandberg*,
  501 U.S. 1083, 111 S. Ct. 2749 (1991) ..................................................................................... 4

Statutes, Regulations and Rules

17 C.F.R. § 229.303 ........................................................................................................................ 9

Other Authorities

Elliott J. Weiss and Janet E. Moser, *Enter Yossarian: How to Resolve the
  Procedural Catch-22 That the Private Securities Litigation Reform Act
  Creates*, 76 Wash. U. L. Q. 457, 480 (1998) ........................................................................... 4

Defendants Citigroup Global Markets Inc., Credit Suisse Securities (USA) LLC, Goldman, Sachs & Co., HSBC Securities (USA) Inc., Merrill Lynch, Pierce, Fenner & Smith Incorporated and Wells Fargo Securities, LLC (the "Underwriter Defendants"), respectfully submit this reply memorandum of law in further support of their motion to dismiss all claims asserted against them in the amended complaint.

## PRELIMINARY STATEMENT

As with the amended complaint itself, plaintiff's claims under the Securities Act of 1933 are an afterthought in its opposition memorandum. Plaintiff fails to address several fundamental flaws with those claims that were identified in the Underwriter Defendants' opening memorandum, confirming that dismissal is required.

*First*, while plaintiff argues that it has alleged the *objective* falsity of estimates made by MetLife, Inc. ("MetLife") of its liabilities for incurred but not reported ("IBNR") life insurance benefits, plaintiff cannot identify any allegation in the amended complaint that those estimates were *subjectively* false, that is, that they were disbelieved by defendants when made. *See* Underwriters Mem. at 7-11 (discussing *Fait v. Regions Fin. Corp.*, 655 F.3d 105, 112-13 (2d Cir. 2011)). Unable to do so, plaintiff mistakenly argues that MetLife "had no reasonable basis for" the estimates even if it believed them, Opp. Mem. at 12, but this is not sufficient to state a claim under *Fait*. *See City of Omaha, Nebraska Civilian Emp. Ret. Sys. v. CBS Corp.* 679 F.3d 64, 68 (2d Cir. 2012). Further, there can be no plausible inference of subjective falsity where, as here, plaintiff "specifically disclaims any reference to or reliance on allegations of fraud" in support of its Securities Act claims. Compl. ¶ 197; *see also id.* ¶¶ 235, 252. Plaintiff has ignored this point entirely.

*Second*, contrary to plaintiff's arguments, the rule articulated in *Fait* unquestionably applies. According to the amended complaint itself, plaintiffs' only Securities Act challenge to

the relevant MetLife financial statements is that they allegedly "understated life insurance claim reserves for IBNR claims." *See* Compl. ¶ 207(b). To evade *Fait*, plaintiff mistakenly argues that its "IBNR misrepresentations pertain to claims where no estimates were required." Opp. Mem. at 11. This is not accurate. As the Second Circuit has recognized, IBNR reserves *are* by their very nature, estimates of losses that involve a certain degree of "conjecture." *See Delta Holdings, Inc. v. Nat'l Distillers & Chem. Corp.*, 945 F.2d 1226, 1229 (2d Cir. 1991). The amount of such unknown liabilities is not "objectively determinable" by referring to the Social Security Administration's "Death Master File" ("SSA-DMF"), as plaintiff now contends. Opp. Mem. at 11. Indeed, as acknowledged on the website describing the SSA-DMF that is quoted at length in the amended complaint, that list of raw mortality data for the population of the United States as a whole does not purport to be comprehensive or free from error. The SSA-DMF is, at best, merely another source of data for actuaries to use in making their estimates of incurred but not reported benefit liabilities under insurance policies written by MetLife.

*Third*, plaintiff's argument that defendants failed to disclose "the known uncertainty that state inquiries and changes . . . related to usage of the SSA-DMF would have a material impact on MetLife's earnings," Opp. Mem. at 19, is directly contradicted by express disclosures in the offering documents. *See* Declaration of Timothy E. Hoeffner dated August 3, 2012 ("Hoeffner Decl."), Exh. A at S-53-54, Exh. B at S-41-42. No allegation in the amended complaint supports plaintiff's hindsight contention that defendants could have foreseen, at the time of the challenged offerings, the ultimate scope or outcome of regulatory inquiries related to the SSA-DMF with more specificity than those warnings actually provided and no such clairvoyance is required.

The Underwriter Defendants are only named in the Securities Act claims, which, as a result of these deficiencies, are inactionable as a matter of law. The claims against the Underwriter Defendants therefore should be dismissed with prejudice.

## ARGUMENT

## THE AMENDED COMPLAINT FAILS TO STATE A CLAIM AGAINST THE UNDERWRITER DEFENDANTS

Plaintiff's opposition memorandum fails to maintain distinctions between its Securities Act claims and its Exchange Act claims, which are pleaded discretely from one another. *See* Compl., ¶¶ 197-268. The amended complaint alleges only two grounds for plaintiff's Securities Act claims: (1) that the offering documents allegedly "omitted loss contingencies and legal proceedings related to a multi-state investigation concerning [MetLife's] use of the SSA-DMF"; and (2) that MetLife's financial statements that were incorporated into the relevant offering documents allegedly "understated life insurance claim reserves for IBNR claims . . . " Compl., ¶ 207. Neither theory states a claim against the Underwriter Defendants upon which relief can be granted.[1]

### I. PLAINTIFF'S CLAIMS BASED ON IBNR ESTIMATES ARE NOT ACTIONABLE UNDER *FAIT*.

"[W]hen a plaintiff asserts a claim under section 11 or 12 based upon a belief or opinion alleged to have been communicated by a defendant, liability lies only to the extent that the

---

[1] Contrary to plaintiff's arguments, the Securities Act claims in the amended complaint are not based on any allegation that the relevant offering documents were misleading because of MetLife statements concerning "publicly reported mortality ratios," "disciplined underwriting results and expense management," or denials concerning "retained assets" accounts, all of which are discussed at length in plaintiff's opposition memorandum. *See* Opp. Mem. at 13-19. It is well established that "[a] claim for relief 'may not be amended by the briefs in opposition to a motion to dismiss.'" *See Telectronics Proprietary Ltd. v. Medtronic, Inc.*, 687 F. Supp. 832, 836 (S.D.N.Y. 1988) (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984)).

3

statement was both objectively false and disbelieved by the defendant at the time it was expressed." *Fait v. Regions Fin. Corp.*, 655 F.3d 105, 110 (2d Cir. 2011) (citing *Virginia Bankshares v. Sandberg*, 501 U.S. 1083, 1095-96, 111 S. Ct. 2749, 2759-60 (1991)). As this Court recently observed, unless plaintiff has plausibly alleged the subjective falsity of an accounting estimate, "such statements may be mistaken, wrongheaded, or at odds with the views of others. But they are not untrue statements of fact." *NECA-IBEW Pension Trust Fund v. Bank of America Corp.*, 10 Civ. 0440 (LAK), slip op. at 2 (S.D.N.Y. Mar. 16, 2012). Plaintiff's opposition memorandum confirms its failure to allege that any defendant disbelieved MetLife's IBNR reserves at the time of the challenged statements. None of plaintiff's arguments to avoid application of *Fait* can save its claims based on MetLife's IBNR reserves from dismissal.[2]

*First*, a Securities Act plaintiff is not permitted to substitute its views of what a defendant *should have* believed about an accounting estimate for the required allegation that the defendant *actually did not* believe that estimate, as plaintiff attempts to argue here.[3] Opp. Mem. at 12; *see City of Omaha, Nebraska Civilian Emp. Ret. Sys. v. CBS Corp.* 679 F.3d 64, 68 (2d Cir. 2012).

---

[2] Plaintiff also incorrectly contends that the objective falsity of MetLife's IBNR reserve estimates was established by MetLife's alleged revision of those reserves. *See* Opp. Mem. at 9. There is no allegation that MetLife restated its financial statements, which would have been required if MetLife and its auditor had concluded that there had been a "misuse of facts that existed at the time the financial statements were prepared." *See* Elliott J. Weiss and Janet E. Moser, *Enter Yossarian: How to Resolve the Procedural Catch-22 That the Private Securities Litigation Reform Act Creates*, 76 Wash. U. L. Q. 457, 480 (1998) ("Generally accepted accounting principles draw a sharp distinction between a change of estimate and an accounting error, which the literature defines as the 'result [of] mathematical mistakes, mistakes in the application of accounting principles, or oversight or misuse of facts that existed at the time the financial statements were prepared.' A company is required to account for an error by restating its income for prior periods.") (citations omitted).

[3] Plaintiff now asserts that the amended complaint "alleges that defendants themselves did not believe (or had no reasonable basis for) their own reserve and IBNR representations when they made them." Opp. Mem. at 12. Notably, however, plaintiff does not cite any allegation in the amended complaint for its assertion that defendants "did not believe" the IBNR estimates, and there are none.

In *City of Omaha*, plaintiffs asserted securities claims based on the announcement by CBS Corp. that it was taking a $14 billion non-cash impairment charge to write down the value of its goodwill. The Second Circuit affirmed dismissal of the claims because the complaint lacked even "conclusory allegations that defendants did not believe their statements of opinion regarding CBS's goodwill at the time they made them." *City of Omaha*, 679 F.3d at 68. In reaching that conclusion, the court specifically rejected the argument that an allegation that defendants "were aware of facts that *should* have led them to begin interim impairment testing earlier" could substitute for knowing disbelief, and such an allegation therefore "would not suffice to state a securities fraud claim after *Fait*." *Id.* (emphasis in original).

Plaintiff's argument here that MetLife *should have* known that its IBNR reserve estimates were understated because it failed to cross-check its claims records against the SSA-DMF is similarly insufficient. *See Lighthouse Fin. Group v. Royal Bank of Scotland Group, PLC*, No. 11 Civ. 398 (GBD), 2012 WL 4616958, at *11 (S.D.N.Y. Sept. 28, 2012) (dismissing section 11 and 12 claims; after *Fait*, "[a]llegations that Defendants should have known that their valuations were inaccurate no longer suffice"); *In re Deutsche Bank AG Sec. Litig.*, No. 09 Civ. 1714 (DAB), 2012 WL 3297730, at *2 (S.D.N.Y. Aug. 10, 2012) (dismissing Securities Act claims under *Fait* where plaintiff alleged that defendants "'should have known' that the ABX Index 'should have been used in valuing RMBS and CDOs'").

Nor does the district court opinion in *Abu Dhabi Comm. Bank v. Morgan Stanley & Co. Inc.*, ___ F. Supp. 2d ___, 2012 WL 3584278 (S.D.N.Y. Aug. 17, 2012), assist plaintiff here. In that case, Judge Scheindlin concluded that a ratings agency could be held liable for a securities rating "unsupported by reasoned analysis or without a factual foundation" because under those circumstances the agency would be "stating a fact-based opinion that it does not believe to be

5

true," thereby establishing subjective falsity. *Id.*, 2012 WL 3584278, at *10. Even if this holding reflects a proper reading of *Fait*, there are no allegations in the amended complaint here that MetLife's IBNR reserve estimates were established without "reasoned analysis" or a "factual foundation." Instead, plaintiff's Securities Act claims boil down to hindsight second-guessing of the IBNR reserve analysis that MetLife unquestionably performed. This does not amount to a plausible allegation of subjective falsity.

*Second*, plaintiff does not even attempt to respond to the Underwriter Defendants' argument that its disclaimer of any allegation of knowing misconduct in its Securities Act claims compels dismissal of those claims to the extent they challenge accounting estimates. *See* Compl. ¶ 197; *see also id.* ¶¶ 235, 252. Several recent decisions have confirmed that *Fait* requires dismissal in those circumstances. *See In re Deutsche Bank AG*, 2012 WL 3297730, at *2 (plaintiffs' disclaimer of knowing misconduct "alone is fatal to Plaintiffs' claims after *Fait*"); *In re General Elec. Co. Sec. Litig.*, 856 F. Supp. 2d 645, 657 (S.D.N.Y. 2012) ("if Immelt had disbelieved this statement of opinion at the time he made it – in other words, if he had lied – then he would have engaged in a form of knowing misconduct. The SAC disclaimed all such allegations. In light of this disclaimer, it has not alleged subjective falsity."); *see also Belmont Holdings Corp. v. SunTrust Banks, Inc.*, No. 1:09-cv-1185-WSD, 2010 WL 3545389, at *6 (N.D. Ga. Sept. 10, 2010) (following district court opinion in *Fait* and finding that disclaimer of knowing misconduct precluded liability for allegedly misstated loan loss reserves).

*Third*, plaintiff is simply wrong in asserting that MetLife's IBNR reserves were "objectively determinable" and therefore not subject to the rule in *Fait*.[4] As the Second Circuit

---

[4] Plaintiff's assertion in its opposition memorandum that "MetLife's IBNR reserves and reserve setting processes were designed to underreport *known* current liabilities," Opp. Mem. at 11 (emphasis in original), is not supported by the amended complaint and, in any event, cannot

has recognized, "IBNR reserves are sums set aside to cover losses for which claims have not been reported but *must be estimated* so the company can pay future claims." *Delta Holdings, Inc. v. Nat'l Distillers & Chem. Corp.*, 945 F.2d 1226, 1229 (2d Cir. 1991) (emphasis added). Because those claims have not yet been reported to the insurer, the figures necessarily depend on accounting and actuarial judgments of the likely experience among the population of policyholders who have not submitted claims. *See id.* at 1231 ("It must be emphasized that no actuarial method is so accurate that it eliminates conjecture in the calculation of IBNR liabilities."). Further, the existence of the SSA-DMF does not eliminate the need for actuarial analysis and estimates. Indeed, the federal government website that is quoted at length in the amended complaint, *see* Compl. ¶ 4, includes a "disclaimer" that the Social Security Administration "cannot guarantee the accuracy of the DMF," that the file "may contain inaccuracies," that "the absence of a particular person on this file is not proof that the individual is alive," and that "in rare instances it is possible for the records of a person who is not deceased to be included erroneously in the DMF."[5]

## II. THE OFFERING DOCUMENTS DISCLOSED REGULATORY INTERACTIONS AND THE RISKS TO METLIFE THAT COULD ARISE FROM THEM.

Plaintiff similarly fails to identify any basis for Securities Act liability of the Underwriter Defendants arising from MetLife's post-offering announcements: the August 5, 2011 disclosure that "[m]ore than 30 U.S. jurisdictions are auditing MetLife, Inc. and certain of its affiliates for compliance with unclaimed property laws" (Compl. ¶ 132), its October 6, 2011 disclosure that it expected to incur a $115 million to $135 million after-tax charge to adjust its reserves in connection with its use of the DMF (Compl. ¶ 135), and its April 23, 2012 disclosure of a

---

be squared with plaintiff's disclaimer of knowing misconduct in its Securities Act claims.

[5] *See* National Technical Information Service website: http://www.ntis.gov/products/ssa-dmf.aspx (last visited Oct. 17, 2012).

multistate settlement with state insurance regulators relating to unclaimed property and its use of the DMF (Compl. ¶ 146).

There is no allegation in the amended complaint to support plaintiff's hindsight contention that the nature and scope of these subsequent developments was known or even foreseeable at the time of the challenged offerings, occurring months or years earlier in August 2010 and March 2011. Only with the benefit of hindsight can plaintiff now contend that the offering materials failed to disclose what they characterize as "the known uncertainty that state inquiries and changes . . . related to usage of the SSA-DMF would have a material impact on MetLife's earnings, income and reserves." Opp. Mem. at 19. But hindsight is not a permissible ground for imposing liability under the securities laws. *See Acito v. IMCERA Group, Inc.*, 47 F.3d 47, 53 (2d Cir. 1995); *Denny v. Barber*, 576 F.2d 465, 470 (2d Cir. 1978).

In fact, the offering materials *did* disclose that MetLife faced the risk of regulatory investigations, subpoenas, and information requests, that some regulatory actions specific to MetLife were "pending," including "various regulatory inquiries, such as information requests, subpoenas and books and record examinations, from state and federal regulators and other authorities." Hoeffner Decl., Exh. A at S-53-54, Exh. B at S-41-42. The prospectus supplements further warned potential investors that "a significant regulatory action against [MetLife] could have a material adverse effect on [its] business . . . ." *Id.*[6]

Even under the facts that plaintiff alleges in its amended complaint, there was no duty to provide more detailed disclosure as to any regulatory inquiry concerning the SSA-DMF that

---

[6] Plaintiffs falsely assert that the "Underwriter Defendants concede that the regulatory inquiries were material." Opp. Mem. at 21. In fact, the page in the Underwriter Defendants' opening memorandum of law that is cited for this proposition does nothing more than recite what the prospectus supplements warned investors, including that "a significant regulatory action against [MetLife] *could have* a material adverse effect on [its] business . . ." Underwriters Mem. at 12 (quoting prospectus supplements) (emphasis added).

8

might have been underway by the time of the challenged offerings. There is no allegation that would support the conclusion that, at the time of the offerings, any such matters presented "uncertainties . . . that the registrant reasonably expects will have a material . . . unfavorable impact on . . . income." 17 C.F.R. § 229.303. Nor has plaintiff plausibly alleged that litigation arising from those inquiries was "substantially certain to occur" at the time of the offerings. *See Richman v. Goldman Sachs Group, Inc.*, ___ F. Supp. 2d ___, 2012 WL 2362539, at *5-6 (S.D.N.Y. June 21, 2012) (collecting cases).

### III. THE SECURITIES ACT CLAIMS ALSO SHOULD BE DISMISSED FOR THE REASONS STATED BY THE METLIFE DEFENDANTS.[7]

To the extent applicable, the Underwriter Defendants join in and incorporate by reference the arguments for dismissal set forth in the MetLife defendants' reply memorandum of law in further support of their motion to dismiss the amended complaint.[8]

---

[7] In responding to an argument in the MetLife defendants' opening memorandum, plaintiff contends that the Court is limited solely to consideration of the four corners of the amended complaint in considering the negative causation defense on a motion to dismiss. *See* Opp. Mem. at 43. This Court has not been so inflexible in considering documents that are integral to the complaint, such as SEC filings, or of which the court may take judicial notice, such as stock prices and the announcement of a downgrade in the credit rating of the United States. *See Blackmoss Invs. Inc. v. ACA Capital Holdings, Inc.*, No. 07 Civ. 10528, 2010 WL 148617, at *11 (S.D.N.Y. Jan. 14, 2010) (dismissing section 11 and 12 claims based on review of SEC filings and stock prices supporting negative causation defense); *In re Britannia Bulk Holdings Inc. Sec. Litig.*, 665 F. Supp. 2d 404, 420 (S.D.N.Y. 2009) (dismissing section 11 and 12 claims based on "various public filings" supporting negative causation argument).

[8] Plaintiff does not respond to, and therefore concedes, the argument that neither Citigroup Global Markets Inc. nor Goldman, Sachs & Co. was an underwriter for the August 2010 offering and therefore cannot have Securities Act liability under any conceivable set of facts.

**CONCLUSION**

For all of the foregoing reasons, and for those set forth in their opening memorandum of law, the Underwriter Defendants respectfully request that the claims asserted against them in the amended complaint be dismissed and that the Court grant them such other and further relief as it may deem just and proper.

Dated:  New York, New York
October 17, 2012

DLA PIPER LLP (US)

By:  /s/ Timothy E. Hoeffner
Timothy E. Hoeffner
timothy.hoeffner@dlapiper.com
John J. Clarke, Jr.
john.clarke@dlapiper.com
Constance Tse
constance.tse@dlapiper.com

1251 Avenue of the Americas
New York, New York 10020-1104
Tel.: (212) 335-4500
Fax: (212) 335-4501

Attorneys for Defendants
  Citigroup Global Markets Inc., Credit Suisse
  Securities (USA) LLC, Goldman, Sachs &
  Co., HSBC Securities (USA) Inc., Merrill
  Lynch, Pierce, Fenner & Smith Incorporated
  and Wells Fargo Securities, LLC

## **CERTIFICATE OF SERVICE**

    I hereby certify that I am one of the attorneys for the underwriter defendants in this action and that on October 17, 2012, I caused a copy of the foregoing to be filed with the Court's ECF system, which will cause notice of its filing to be served electronically upon all counsel who have appeared in this action.

                                                     /s/ Timothy E. Hoeffner
                                                       Timothy E. Hoeffner