UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————— x
CITY OF WESTLAND POLICE AND FIRE          :   Civil Action No. 1:12-cv-00256-LAK
RETIREMENT SYSTEM, Individually and on    :
Behalf of All Others Similarly Situated,   :   CLASS ACTION
                                          :
                           Plaintiff,     :   MEMORANDUM OF LAW IN SUPPORT
                                          :   OF PLAINTIFF'S MOTION FOR PARTIAL
             vs.                          :   RECONSIDERATION OF THE COURT'S
                                          :   MEMORANDUM OPINION DATED
METLIFE INC., et al.,                     :   FEBRUARY 28, 2013
                                          :
                           Defendants.    :
                                          :
                                          :
———————————————————— x

819789_1

# TABLE OF CONTENTS

**Page**

I. PRELIMINARY STATEMENT ..........................................................................................1

II. STANDARD ..................................................................................................................3

III. ARGUMENT ................................................................................................................4

    A. The February 28, 2013 Order Overlooked Facts and Controlling Authority Demonstrating that Plaintiff's Allegations of Loss Causation Are Sufficient to Survive a Rule 12(b)(6) Motion to Dismiss........................................4

        1. The February 28, 2013 Order Overlooked the Totality and Sufficiency of Plaintiff's Loss Causation Allegations................................6

        2. The February 28, 2013 Order Overlooked that the October 6, 2011 Disclosure Apportioned Plaintiff's Loss Sufficient to Meet *Dura* and Rule 8 Pleading Requirements ..............................................................8

        3. The February 28, 2013 Order Overlooks that Its Materiality Findings Demonstrate the Sufficiency of Plaintiff's Loss Causation Allegations ...............................................................................................11

    B. The February 28, 2013 Order Incorrectly Accepted Defendants' Extrinsic Evidence Over Plaintiff's Objections and Credited the Evidence as True and Grounds for Dismissal......................................................................................12

    C. The February 28, 2013 Order Overlooked Second Circuit Authority Holding that the Stock Price Recovery Is Not Relevant to Loss Causation ..........15

    D. Plaintiff in No Way Intended to Mislead by Not Affirmatively Pleading the Occurrence of the S&P Downgrade of U.S. Debt Ratings ..............................16

IV. CONCLUSION............................................................................................................17

# TABLE OF AUTHORITIES

**Page**

## CASES

*Bell Atl. Corp. v. Twombly*,
　550 U.S. 544, 127 S. Ct. 1955 (2007)....................................................................10

*Cobalt Multifamily Investors I, LLC v. Shapiro*,
　No. 06 Civ. 6468(KMW)(MHD),
　2009 WL 2058530 (S.D.N.Y. July 15, 2009) ..........................................................4

*Dura Pharm., Inc. v. Broudo*,
　544 U.S. 336, 125 S. Ct. 1627 (2005)............................................................. *passim*

*Emergent Capital Inv. Mgmt., LLC v. Stonepath Grp., Inc.*,
　343 F.3d 189 (2d Cir. 2003)..........................................................................2, 16, 17

*First Nationwide Bank v. Gelt Funding Corp.*,
　27 F.3d 763 (2d Cir. 1994)............................................................................9, 10, 13

*Ganino v. Citizens Utils. Co.*,
　228 F.3d 154 (2d Cir. 2000)..................................................................................12

*Global Network Commc'ns, Inc. v. City of N.Y.*,
　458 F.3d 150 (2d Cir. 2006)..................................................................................12

*Gould v. Winstar Commc'ns, Inc.*,
　692 F.3d 148 (2d Cir. 2012)................................................................................2, 6

*In re Bear Stearns Cos., Inc. Sec., Derivative, & ERISA Litig.*,
　763 F. Supp. 2d 423 (S.D.N.Y. 2011)............................................................4, 5, 16

*In re Fannie Mae 2008 Sec. Litig.*,
　742 F. Supp. 2d 382 (S.D.N.Y. 2010)..............................................................5, 11

*In re Gilead Scis. Sec. Litig.*,
　536 F.3d 1049 (9th Cir. 2008) ..............................................................................16

*In re Lehman Bros. Sec. & ERISA Litig.*,
　799 F. Supp. 2d 258 (S.D.N.Y. 2011)..............................................................5, 10

*In re Rezulin Prods. Liab. Litig.*,
　224 F.R.D 346 (S.D.N.Y. 2004) ............................................................................4

*In re Sec. Capital Assurance, Ltd. Sec. Litig.*,
　729 F. Supp. 2d 569 (S.D.N.Y. 2010)..................................................................13

**Page**

*In re Winstar Commc'ns*,
   No. 01 CV 3014(GBD),
   2006 WL 473885 (S.D.N.Y. Feb. 27, 2006) ..........................................................5

*King Cnty. v. IKB Deutsche Industriebank AG*,
   708 F. Supp. 2d 334 (S.D.N.Y. 2010) .................................................5, 6, 10, 16

*Kiobel v. Royal Dutch Petroleum Co.*,
   No. 02 Civ. 7618(KMW)(HBP),
   2009 WL 3817590 (S.D.N.Y. Nov. 16, 2009) ......................................................4

*Kramer v. Time Warner, Inc.*,
   937 F.2d 767 (2d Cir. 1991).............................................................................12, 13

*Lattanzio v. Deloitte & Touche LLP*,
   476 F.3d 147 (2d Cir. 2007).....................................................................................8

*Lentell v. Merrill Lynch & Co.*,
   396 F.3d 161 (2d Cir. 2005)............................................................................ *passim*

*Rosado v China N. E. Petroleum Holdings, Ltd.*,
   692 F.3d 34 (2d Cir. 2012).................................................................................11, 15

*Shrader v. CSX Transp.*,
   70 F.3d 255 (2d Cir. 1995).......................................................................................4

*Sosa v. Alvarez-Machain*,
   542 U.S. 692, 124 S. Ct. 2739 (2004) .....................................................................2


**STATUTES, RULES AND REGULATIONS**

15 U.S.C.
   §78u-4(e)(1),(2) ....................................................................................................16

- iii -

Lead Plaintiff Central States and Southwest Areas Pension Fund ("plaintiff") respectfully submits this memorandum of law in support of its motion for partial reconsideration of the Memorandum Opinion dated February 28, 2013.

## I.    PRELIMINARY STATEMENT

On February 28, 2013, the Court issued its Memorandum Opinion (the "February 28 Order") regarding MetLife, Inc. ("MetLife" or the "Company"), the Individual Defendants' (collectively, "MetLife Defendants") and Underwriter Defendants' motions to dismiss the Amended Class Action Complaint for Violation of the Federal Securities Laws ("Amended Complaint").  Dkt. Nos. 39, 43. In the February 28 Order, the Court denied MetLife's and certain of the Individual Defendants and Underwriter defendants' motions to dismiss plaintiff's Securities Act of 1933 ("1933 Act") claims.[1] The February 28 Order granted defendants' motions to dismiss plaintiff's Securities Exchange Act of 1934 ("Exchange Act") claims finding that the Amended Complaint failed to adequately allege loss causation, specifically in connection with disclosures on August 5, 2011 and October 6, 2011, respectively.  February 28 Order at 14-16.[2]  With respect to the alleged August 5, 2011 disclosure, the Court held as follows:

> While loss causation often is a fact specific question appropriate for trial, "when the plaintiff's loss coincides with a market-wide phenomenon causing comparable losses to other investors, the prospect that a plaintiff's loss was caused by the fraud decreases and a plaintiff's claim fails when it has not adequately ple[]d facts, which if proven would show that its loss was caused by the alleged misstatements as opposed to intervening events."  Given the precipitous drop in the

---

[1]    The February 28 Order denied the Underwriter Defendants' motion to dismiss the 1933 Act claims in their entirety.  With respect to the MetLife Defendants, the February 28 Order denied plaintiff's 1933 Act §11 claims against all MetLife Defendants, except William J. Mullaney and Eduardo Castro-Wright and granted the MetLife Defendants' motion to dismiss plaintiff's §12 claims.

[2]    No judgment has been entered with respect to the dismissed claims.

> market, and the nearly equal drop in value across major life insurance companies, plaintiff was obliged to allege factual matter sufficient to "disaggregate those losses caused by the [downgrade in U.S. credit rating] from disclosures of the truth behind the alleged misstatements."  In other words, plaintiff was obliged to "allege[] facts that would allow a factfinder to ascribe some rough proportion of the whole loss to the . . . misstatements."

February 28 Order at 14 (alterations in original).

> With respect to the October 6, 2011 disclosure, the Court held:

> > Plaintiff's loss causation allegations relating to the October 6, 2011 disclosure fail for similar reasons.  A comparison of MetLife's stock performance with that of other major insurers reveals that they traded in lockstep with one another throughout October 2011.  The MetLife Defendants submitted with their briefing a chart tracking the stock movements of several major life insurers in 2011.  On October 6, all of the insurers' stock lost value in nearly equal proportions.  All of the stocks then recovered nearly in full within a matter of days.  This lockstep trading decreases the prospect that the loss was caused by the alleged disclosure.  Without more, the loss causation allegations are insufficient to withstand the motion to dismiss.

*Id.* at 15-16.

First, plaintiff did not affirmatively plead facts regarding other market factors that contributed to the August 8, 2011 stock price decline.  Plaintiff's pleading was guided by the understanding that the impact of other market factors is a subject for proof at trial.  *Emergent Capital Inv. Mgmt., LLC v. Stonepath Grp., Inc.*, 343 F.3d 189, 197 (2d Cir. 2003); *accord Sosa v. Alvarez-Machain*, 542 U.S. 692, 704, 124 S. Ct. 2739, 2750 (2004) ("a given proximate cause need not be, and frequently is not, the exclusive proximate cause of harm").  Indeed, relying on *Emergent Capital*, the Second Circuit has recently reiterated that even at summary judgment, the question of whether broader market trends or the alleged fraud caused plaintiff's economic loss is a question reserved for the trier of fact.  *See Gould v. Winstar Commc'ns, Inc.*, 692 F.3d 148, 161-62 (2d Cir. 2012) ("Although a much closer call, a jury could reasonably infer based on the expert testimony and other evidence that the precipitous decline in Winstar's stock price in 2001 was attributable in part to the alleged fraud. GT counters that any decline in Winstar's stock price that was not caused by

- 2 -

broader market trends resulted not from the alleged fraud but from Lucent's cancellation of its credit facility. This may be true for a portion of the collapse in Winstar's stock price.  There is support as well for the argument that the downgrade in Winstar's credit rating resulted in a substantial decline in the stock price.  But these facts, if established, hardly foreclose the reasonable inference that some part of the decline was substantially caused by the disclosures about the fraud itself.  We therefore conclude that a jury reasonably could find the requisite 'causal link between [Winstar's] alleged misconduct and the economic harm ultimately suffered' by the Plaintiffs.") (alteration in original).  Plaintiff is nevertheless acutely sensitive to the impression that was left and regrets any appearance of less than complete candor.

Notwithstanding the above, plaintiff respectfully submits that the February 28 Order overlooked: (i) certain factual allegations pertaining to loss causation, (ii) controlling relevant authority pertinent to those facts, and (iii) its findings on materiality which demonstrate the sufficiency of the loss causation allegations.  Plaintiff also submits that the Court improperly considered and accepted as true, extrinsic evidence submitted by defendants which led to inaccurate factual conclusions.  For these reasons, plaintiff respectfully requests that the Court grant partial reconsideration of the February 28 Order, as to its ruling regarding loss causation under §10(b) of the Exchange Act and Federal Rule of Civil Procedure ("Rule") 10b-5.

## II.    STANDARD

Plaintiff's motion for relief is timely pursuant to Local Civil Rule 6.3 – Motions for Reconsideration or Reargument.  Pursuant to Local Civil Rule 6.3, any motion for reconsideration of a court order determining a motion shall be served within 14 days after the entry of the Court's determination of the original motion.  In accordance with Local Civil Rule 6.3, plaintiff concisely details herein the matters or controlling decisions which were before the Court, but plaintiff believes

819789_1

the Court overlooked.  *In re Rezulin Prods. Liab. Litig.*, 224 F.R.D 346 (S.D.N.Y. 2004).  A court may exercise its discretion to reconsider a ruling to correct a clear error or prevent a manifest injustice.  *See Cobalt Multifamily Investors I, LLC v. Shapiro*, No. 06 Civ. 6468(KMW)(MHD), 2009 WL 2058530, at *5 (S.D.N.Y. July 15, 2009).  A court may also grant reconsideration where it has overlooked pertinent legal authority or facts.  *See Kiobel v. Royal Dutch Petroleum Co.*, No. 02 Civ. 7618(KMW)(HBP), 2009 WL 3817590, at *2 (S.D.N.Y. Nov. 16, 2009).  At bottom, a court may grant reconsideration to evaluate any matters "that might reasonably be expected to alter the conclusion reached by the court."  *See Shrader v. CSX Transp.*, 70 F.3d 255, 257 (2d Cir. 1995).

## III.    ARGUMENT

### A.    The February 28, 2013 Order Overlooked Facts and Controlling Authority Demonstrating that Plaintiff's Allegations of Loss Causation Are Sufficient to Survive a Rule 12(b)(6) Motion to Dismiss

Loss causation is the casual link between the alleged misconduct and the economic harm ultimately suffered by plaintiff.  *Lentell v. Merrill Lynch & Co.*, 396 F.3d 161, 172 (2d Cir. 2005).  In order to adequately allege loss causation, a plaintiff only needs to "provide a defendant with *some indication* of the loss and the causal connection that the plaintiff has in mind."  *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 347, 125 S. Ct. 1627, 1634 (2005).[3]  That is, a complaint must allege facts that support an inference that defendants' misrepresentations and omissions concealed circumstances that bear upon the loss suffered such that plaintiff would have been spared and or an ascertainable portion of that loss absent the fraud.  *Lentell*, 396 F.3d at 175.[4]

---

[3]    All emphasis is added and all citations and internal footnotes are omitted unless otherwise noted.

[4]    A short and plain statement suffices to plead loss causation under §10(b) and Rule 8's notice pleading standards.  *See In re Bear Stearns Cos., Inc. Sec., Derivative, & ERISA Litig.*, 763 F. Supp.

- 4 -

Where "'[a plaintiff's] loss was caused by an intervening event . . . the chain of causation . . . is a matter of proof at trial.'" *Lentell*, 396 F.3d at 174 (alteration in original).  Therefore, a securities complaint need not rule out all competing theories for the drop in stock; that is an issue to be determined by the trier of fact on a fully developed record.  *Bear Stearns*, 763 F. Supp. 2d at 507 (collecting cases); *In re Winstar Commc'ns*, No. 01 CV 3014(GBD), 2006 WL 473885 (S.D.N.Y. Feb. 27, 2006) (defendants' argument that the stock price drop was due to the collapse of the telecommunications sector was a matter of proof at trial); *In re Fannie Mae 2008 Sec. Litig.*, 742 F. Supp. 2d 382, 414 (S.D.N.Y. 2010) ("Although it may be likely that a significant portion, if not all, of plaintiffs' losses were actually the result of the housing market downturn and not these alleged misstatements, at this stage of pleading, the Court . . . need only find that Plaintiffs' allegations are plausible.").

In other circumstances "'when the plaintiff's loss coincides with a marketwide phenomenon causing comparable losses to other investors, the ***prospect*** that the plaintiff's loss was caused by the fraud decreases.'" *Lentell*, 396 F.3d at 174.  Plaintiff's claim fails when "'it has not adequately ple[]d facts which, if proven, would show that its loss was caused by the alleged misstatements as opposed to intervening events.'" *Id*.  However, the existence of market-wide circumstances as a causative factor does not by itself exclude a sufficient causal connection between the alleged misstatements and omissions and a portion of the losses plaintiffs sustained.  *In re Lehman Bros. Sec. & ERISA Litig.*, 799 F. Supp. 2d 258 (S.D.N.Y. 2011).

---

2d 423, 505 (S.D.N.Y. 2011); *King Cnty. v. IKB Deutsche Industriebank AG*, 708 F. Supp. 2d 334, 339 n.31 (S.D.N.Y. 2010) (citing *Dura*, 544 U.S. at 346, 125 S. Ct. at 1634).

- 5 -

Indeed, Judge Scheindlin in *IKB*, 708 F. Supp. 2d at 343, recently addressed directly whether *Lentell* requires a complaint to exclude or eliminate a competing casual connection between the misrepresentations and plaintiff's losses, finding it does not. *Id*. ("[N]either *Lentell* nor *Dura* burden plaintiffs with pleading that ***no other possible*** event could have caused plaintiffs' losses as S&P and Moody's suggest. *Lentell* states unequivocally that the existence of a 'market-wide phenomena caus[ing] comparable losses to other investors' only '***decreases***' the prospect that the plaintiff's loss was caused by the fraud. In other words, *Lentell* does not say that the existence of a market-wide phenomenon necessarily ***eliminates*** a plausible causal connection between plaintiffs' losses and defendants' alleged fraud.") (emphasis in original). *Gould v. Winstar Commc'ns., Inc.*, 692 F.3d 148, 162 (2d Cir. 2012).

1. **The February 28, 2013 Order Overlooked the Totality and Sufficiency of Plaintiff's Loss Causation Allegations**

The Amended Complaint alleges a class period that begins on February 2, 2010 and ends on October 6, 2011 (inclusive, the "Class Period"). ¶1.[5] During the Class Period, plaintiff pleads two Company-specific disclosures relevant to loss causation. On Friday, August 5, 2011, the Company filed with the Securities Exchange Commission ("SEC") its Form 10-Q for the period ended June 30, 2011 which disclosed for the first time that regulatory investigations into its death benefits practices had expanded to more than 30 jurisdictions, could result in additional escheatment to the states, additional payments to beneficiaries, administrative penalties, and that the Company could not estimate the cost of such payments or related to investigations, but conceded the costs could be "***substantial***." ¶¶132, 174, 175. Afterward, on the same day, *Bloomberg* published an article

---

[5] All "¶" and "¶¶" references are to the Amended Complaint.

discussing the August 5, 2011 Form 10-Q disclosure, noting the financial and potential legal exposure and that MetLife could not estimate amount of the exposure, but that it could be substantial.  ¶¶132-134, 174-176.

These newly disclosed facts were sharply inconsistent with prior material misrepresentations concerning the adequacy of the Company's reserves, reserve setting practices, reported mortality ratios, reported earnings and the merit (or lack thereof) to regulatory investigations or lawsuits concerning its compliance with unclaimed property laws.  ¶¶132, 174-176.

Importantly, the August 5, 2011 disclosure was not the only disclosure and did not end the Class Period.  The Amended Complaint alleges that on October 6, 2011, the end of the Class Period, the Company filed a Form 8-K which materially quantified the financial impact of the investigations identified in the August 5, 2011 Form 10-Q and stated that MetLife would take a charge between $235 million and $275 million.  ¶¶135-137.  The February 28 Order overlooked the significance of allegations that between $115 million and $135 million (approximately half) of that charge would be apportioned to increase reserves in connection with the investigation's use of the Social Security Administration's Death Master File ("SSA-DMF").  ¶135-136[6];  *Lentell*, 396 F.3d at 177.  On the evening of October 6, 2011 following the filing of the Form 8-K, securities analysts issued reports headlining the reserve charges relating to death benefit investigations and the likely negative impact on the company's quarter financial results.  ¶¶136-138.  On October 7, 2011, additional analysts reported on the October 6, 2011 charges.  On October 7, 2011, MetLife stock price fell 6.1%.  ¶139.

---

[6]      Plaintiff has concurrently herewith filed a motion for leave to file a Proposed Second Amended Complaint which if granted, will allege that the October 6, 2011 Form 8-K was filed with the SEC at 4:24 p.m., after the market closed on October 6, 2011 and that *Reuters* reported that MetLife share price declined 2.8% **after hours** on October 6, 2011 **on this news**.

The Amended Complaint's loss causation included reference to the misrepresentations and the disclosures of the relevant truth through both disclosures as relevant to loss causation.  *See* ¶¶168-179.

> [L]ead plaintiff suffered an economic loss, *i.e.*, damages, under the Federal Securities Laws when MetLife's stock price ***continued to decline following the Company's disclosures on August 5, 2011 and October 6, 2011 regarding defendants' scheme to conceal MetLife's true financial condition***.

¶179.  Loss causation was adequately pled.

### 2.    The February 28, 2013 Order Overlooked that the October 6, 2011 Disclosure Apportioned Plaintiff's Loss Sufficient to Meet *Dura* and Rule 8 Pleading Requirements

Defendants' motions, isolating the August 5, 2011 and October 6, 2011 disclosures into wholly independent loss causation events, asserted that the August 5, 2011 post-trading-hours announcement S&P downgrade of U.S. debt ratings was an intervening and coinciding event, negating plaintiff's August loss causation allegation.  Memorandum of Law in Support of the MetLife Defendants' Motion to Dismiss the Amended Complaint ("MetLife Mem.") at 35-38.  The February 28 Order agreed with defendants and stated that the Amended Complaint fails to allege facts ascribing some rough proportion of the whole loss to the misrepresentations.  February 28 Order at 14-15 (citing *Lattanzio v. Deloitte & Touche LLP*, 476 F.3d 147, 158 (2d Cir. 2007)).

However, the Amended Complaint specifically alleged that the October 6, 2011 Form 8-K quantified the impact of the August 5, 2011 announcement, reporting that MetLife would take a charge up to $135 million for death master file reserve increases.  ¶135-139.  That is ***nearly 50%*** of the total $275 million of all potential charges – more than a rough proportion of the loss.  *Lentell*, 396 F.3d at 175.  Defendants argued and the February 28 Order appears to have accepted that the Amended Complaint ignored the other pieces of "negative news" reported in the October 6, 2011 8-K.  MetLife Mem. at 38; February 28 Order at 16.  The February 28 Order overlooked that the

Amended Complaint alleged that on October 6, 2011, Credit Suisse reported that the charges were due "*to three items*." ¶136.  The *first* being $115-$135 million related to "the use of the SSA-DMF that would impact earnings between $0.11-$0.13 per share. *Id.* Moreover, the Amended Complaint alleges that on October 7, 2011, Zack's Equity Research noted that the "*bulk of the extraordinary expenses*" were related to the SSA-DMF death master reserve.  ¶137.  Later, in the loss causation section, plaintiff alleged that the October 6, 2011 Form 8-K stated "among other things" that it would take at least $115 million after that charge.  ¶179.  The other pieces of information were not ignored.

In any event, the other two "charges" mentioned by MetLife in the October 6, 2011 Form 8-K, do not appear to be fraud-related and defendants did nothing to demonstrate that they were considered "negative" or were considered to have caused the stock price to decline on October 7, 2011.  One charge was for losses in home and auto, estimated at up to $62 million higher than the Company's previous plan.  The other charge was an estimated $40 million to satisfy financial obligations for life and health insurance guaranty associations.[7]  Thus, the total *maximum aggregate* for both charges unrelated to the alleged actionable misrepresentations and omissions was $102 million.  That is $13 million *less than* the *minimum* estimate for the SSA-DMF fraud related reserve charge.  ¶¶135-136.

In addition, the Court overlooked that despite defendants' reference to so-called industry-wide events causing comparable losses to other investors in October 2011 (MetLife Mem. at 38), defendants submitted nothing more than a price graph of selected insurance companies and never

---

[7]     *See* Declaration of Elliot Greenfield in Support of the MetLife Defendants' Motion to Dismiss the Amended Complaint ("Greenfield Decl."), Ex. H.

even identified such industry-wide events in October 2011 which could defeat plaintiff's claims at the pleading stage.  February 28 Order at 16.  There is simply no plausible opposing or coinciding intervening event in the record, that would explain MetLife's 6.1% October 7, 2011 stock price decline, sufficient to negate the inference that "plaintiffs are entitled to an opportunity to attempt to prove that some ascertainable amount of the losses they suffered was attributable to . . . misstatements and omissions."  *Lehman*, 799 F. Supp. 2d at 306-307.  Even if there were, resolution of competing facts regarding causation is a matter for proof at trial.  *Lentell*, 396 F.3d at 174.

Plaintiff respectfully submits that "[t]o hold that plaintiffs failed to plead loss causation solely because the [S&P downgrade] occurred contemporaneously with [MetLife's] collapse [in August] would place too much weight on one single factor and would permit [MetLife] to blame the [market] when their alleged conduct plausibly caused at least some proportion of plaintiffs' losses."  *IKB*, 708 F. Supp. 2d at 343-44[8]; *First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763, 772 (2d Cir. 1994) (finding that it was not simply that in that case there was a coinciding housing market decline, but instead, "it is the cumulative effect of the considerations discussed above, ***rather than any single factor***, that compels our decision").

---

[8]     As Judge Scheindlin wrote in *IKB*, 708 F. Supp. 2d at 345-46, quoting the Supreme Court in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556, 127 S. Ct. 1955, 1965 (2007), "S&P and Moody's argument may yet prevail at a later stage in this case.  But, a court's task when ruling on a motion to dismiss is to 'constru[e] the complaint liberally, accept[ ] all factual allegations in the complaint as true, and draw[ ] all reasonable inferences in the plaintiffs' favor.'  As the Supreme Court stated in *Twombly*, 'a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely.'  Thus, even though I am uncertain whether plaintiffs will be able to ultimately prove that any portion of their losses were caused by the defendants' conduct as opposed to the credit crisis, that is not their burden at this stage.  If defendants ultimately prove that plaintiffs' losses were, in fact, caused entirely by an intervening event, then defendants will prevail either at summary judgment or at trial."

**3.     The February 28, 2013 Order Overlooks that Its Materiality
Findings Demonstrate the Sufficiency of Plaintiff's Loss
Causation Allegations**

The Amended Complaint's loss causation allegations particularize the loss plaintiff has in

mind, detailing disclosures of material facts which caused the stock price to decline. *Dura*, 544 U.S.

at 347, 125 S. Ct. at 1634.  In analyzing materiality, the February 28 Order acknowledges allegations

and the disclosures of August 5, 2011 and October 6, 2011 and related stock price declines together

sufficiently allege both materiality and loss causation:

> Here, the alleged corrective disclosures included the announcement of a nation-wide
> investigation into one of MetLife's important businesses and an increase in reserves
> that caused operating earnings for insurance products to be down 23[%] for the
> quarter.  Plaintiff alleges that MetLife's shares dropped in value after the disclosures.
> This is sufficient.

February 28 Order at 22 (referencing ¶¶132-142).

Plaintiff respectfully submits that the Court's conclusion with respect to materiality reveals

the plausibility and adequacy of the Amended Complaint's loss causation allegations.  The February

28 Order identifies the plausible relationship and causal link between defendants' misrepresentations

resulting in investors' losses. *Id.*; *Fannie Mae*, 742 F. Supp. 382.  Indeed, "the announcement of a

nation-wide investigation into one of MetLife's important businesses," was the disclosure which

occurred on August 5, 2011.  February 28 Order at 22; ¶¶132-133.  The "increase in reserves that

caused operating earnings to be down 23 percent for the quarter," were the disclosures on October 6,

2011 and October 27, 2011.  ¶¶135-136, 141-142.  According to the February 28 Order "[p]laintiff

alleges that MetLife's shares dropped in value after the[se] disclosures" and concluded "[that] is

sufficient."  February 28 Order at 22; *see also Rosado v China N. E. Petroleum Holdings, Ltd.*, 692

F.3d 34, 40 (2d Cir. 2012) (allegations of something more than the mere purchase at an inflated price

but that the price dropped after the alleged fraud became known sufficient to satisfy *Dura* pleading

standards).

> **B.    The February 28, 2013 Order Incorrectly Accepted Defendants'**
> **Extrinsic Evidence Over Plaintiff's Objections and Credited the**
> **Evidence as True and Grounds for Dismissal**

In contrast to its finding on materiality discussed in section III.A.3. above, and assessing the

identical factual allegations, the Court found that plaintiff had failed to allege loss causation.

February 28 Order at 14-16.  The finding appears to be based on graphs submitted by defendants,

which purported to show a relevant comparison of share prices of selected life insurers.  Defendants

requested that the Court accept the graphs not only as relevant but as true, to negate plaintiff's

showing of loss causation allegations at the pleading stage.  Greenfield Decl., Exs. U and V;

February 28 Order, Exs. 1 and 2.  Plaintiff objected to the submission of these documents in its

opposition to defendants' motion to dismiss arguing that the documents were not referenced or relied

upon in the Amended Complaint and that judicial notice was inappropriate.  Plaintiffs' Consolidated

Opposition to the MetLife Defendants' and the Underwriter Defendants' Motions to Dismiss

Amended Complaint ("Opposition") at 39 n.23 (citing *Global Network Commc'ns, Inc. v. City of

N.Y.*, 458 F.3d 150, 156 (2d Cir. 2006)); *see also Kramer v. Time Warner, Inc.*, 937 F.2d 767, 773

(2d Cir. 1991) (relying on the truth of documents offered by defendants as grounds for dismissal

would run afoul of the rule that the district court must confine itself to the four corners of the

complaint).

While the Court may indeed take judicial notice of well-publicized stock prices, *Ganino v.

Citizens Utils. Co.*, 228 F.3d 154, 166 n.8 (2d Cir. 2000), the graphs were not simply stock prices,

but instead, a vague visual illustration of stock price movement of a small group of insurers selected

by defendants with no scientific basis or meaning, or attempt to initiate an event study that would

explain the stock price movement.[9]  Plaintiff respectfully submits that it was error to consider defendants' graphs, to accept them as true, and to adopt defendants' proposed legal conclusions drawn from them as grounds for dismissal.  *Kramer*, 937 F.2d at 773.  For example, citing to defendants chart, the February 28 Order found as part of the grounds for dismissal that "on October 6, all the insurers' stock lost value in nearly equal proportions."  February 28 Order at 15.  Although defendants suggested such a conclusion with their pictures of stock price movements, defendants did not specifically argue that "all insurers' lost value" on October 6.  Indeed, they cannot because the October 6, 2011 Form 8-K, which plaintiff alleges triggered the stock price decline on October 7, 2011, was not filed with the SEC until 4:24 p.m., which was ***after market closed*** on October 6, 2011.  U.S. Securities Exchange Commission, http://www.sec.gov/Archives/edgar/data/1099219/000095012311088935/y92943e8vk.htm (last visited Mar. 14, 2013).  Thus, the stock price movement ***on*** October 6, 2011 cannot serve as grounds for dismissal for failure to allege loss causation.  *First Nationwide*, 27 F.3d at 771 ("'conclusions of law or unwarranted deductions of fact are not admitted'").[10]

---

[9]     Of course, "[p]laintiffs are not expected to conduct an event study on a Motion to Dismiss." *In re Sec. Capital Assurance, Ltd. Sec. Litig.*, 729 F. Supp. 2d 569, 600 n.5 (S.D.N.Y. 2010). However, in connection with plaintiff's motion for leave to amend filed concurrently herewith, plaintiff's PSAC.  In addition to specifically acknowledging the occurrence of the August 5, 2011 post market close announcement of the U.S. credit downgrade, will also include an event and regression analysis demonstrating the statistical significance of MetLife's stock price decline on October 7, 2011.

[10]     If the Court is not inclined to partially reconsider the February 28 Order, plaintiff's PSAC includes the time after the market closed on October 6, 2011 when MetLife filed its Form 8-K.  In addition, the PSAC will allege that *Reuters* published a report titled, "MetLife to take $275M in charges to life benefits catastrophes," finding that MetLife failed to pay even when it knew the insured was dead.  The article also noted the charges and stated that "MetLife shares, which were the top gainer among S&P insurance stocks on Thursday, fell 2.8 percent to $29.83 ***in after-hours trading on the news***."  Ben Berkowitz & Matthew Lewis, *UPDATE 2 - MetLife to take up to $275*

The MetLife Defendants' motion to dismiss also argued that plaintiff failed to disaggregate the October 6, 2011 disclosure from "other industry-wide events causing comparable losses to other investors," and plaintiff's allegations of loss were implausible in light of "news and events effecting the entire industry." MetLife Mem. at 38. First, this is a proof issue for trial. *Lentell*, 396 F.3d at 174. Moreover, the February 28 Order overlooked that the MetLife Defendants' motion never attempted to identify the so-called "news events" occurring on or around October 6, 2011 from which plaintiff purportedly failed to disaggregate. *See generally* MetLife Mem. at 38-40. Instead, it simply stated their existence conclusorily asserted and that insurers traded in "lockstep," in October 2011. *Id.* at 38.[11] The February 28 Order accepted that "this lockstep decreases the prospect that the loss was caused by the alleged disclosure. February 28 Order at 16. But, the graph alone does not and cannot demonstrate as a matter of law that insurers traded in lockstep. While not required to do so at the pleading stage, plaintiff has nevertheless employed an event study in the Proposed Second Amended Complaint (using the S&P 500 as the market index and the S&P 500 Insurance index as the insurance industry index) which shows that the October 7, 2011 price decline is statistically significant at a 95% confidence level. That means that the probability of a price decline equal to or greater than MetLife's actual price decline occurring randomly was less than 5 percent. *See* Memorandum of Law in Support of Leave to File [Proposed] Second Amended Complaint for

---

*mln in 3rd-qtr charges*, Reuters (Oct. 6, 2011), http://www.reuters.com/article/2011/10/06/metlife-idUSN1E7951S3 20111006.

[11]     Defendants never even explained why they selected for their graphs the five insurers they did or why they would exclude insurers like AIG which also took a charge of $100 million to increase reserves for its use or non-use of the SSA-DMF.  ¶140.

Violation of the Federal Securities Laws ("Leave to File Mem.").  These factual allegations allege loss causation far beyond *Dura*'s Rule 8 requirement.

Accepting the graphs for their truth, plaintiff submits was error.

### C.   The February 28, 2013 Order Overlooked Second Circuit Authority Holding that the Stock Price Recovery Is Not Relevant to Loss Causation

As additional ground for concluding that plaintiff's loss causation allegations failed, the February 28 Order found that plaintiff had failed to allege adequately loss causation because after the October 6, 2011 disclosures, "[a]ll of the stocks then recovered nearly in full within a matter of days."  February 28 Order at 16.  As plaintiff argued in its Opposition, the Second Circuit has recently confirmed that "the fact that the price rebounded does not, at the pleading stage, negate the plaintiff's showing of loss causation."  *Rosado*, 692 F.3d at 39-40.  In *Rosado*, the Second Circuit rejected defendant's argument that the rebound in the stock price negated loss causation allegations and held that price rebound after an initial drop requires the court to consider a competing theory of causation and raises factual questions not suitable for resolution on a motion to dismiss.  *Id*.  Here, the February 28 Order, citing to the Greenfield Declaration, incorrectly accepted as true over plaintiff's objection and granted in part defendants' motion to dismiss based on conclusory and unsupported charts, noting that certain insurers traded in "lockstep" in October 2011, which "decrease[d] the prospect that the loss was caused by the alleged disclosure."  February 28 Order at 15-16.  Moreover, as indicated above, plaintiff has employed an event study it will include in its

- 15 -

PSAC which shows that the October 6, 2011 disclosure and the stock price decline on October 7, 2011 was statistically significant.[12]  *See* Leave to File Mem.

> ### D.   Plaintiff in No Way Intended to Mislead by Not Affirmatively Pleading the Occurrence of the S&P Downgrade of U.S. Debt Ratings

Plaintiff recognizes the need for and expectation of candor and credibility.  In light of Second Circuit and district court authority holding that plaintiff need not, at the pleading stage, affirmatively plead facts eliminating or disproving the impact of market factors on their economic loss, plaintiff did not affirmatively plead the August 5-8, 2011 downgrade of U.S. debt by S&P.  *Emergent Capital*, 343 F.3d at 197; *Lentell*, 396 F.3d at 174; *Bear Stearns*, 763 F. Supp. 2d at 507; *IKB*, 708 F. Supp. 2d at 343.

Plaintiff's loss causation allegations, however, did not rest on the August 5, 2011 allegations alone.  *See* ¶¶136-139, 168-179.  Rather, plaintiff pled facts during the Class Period with the disclosure of a $115 million - $135 million reserve charge that specifically quantified the magnitude of the misconduct which was partially disclosed on August 5, 2011.  *See In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1054, 1059 (9th Cir. 2008) (specifically recognizing the plausibility of a temporal gap (nearly three months) between the first fraud related disclosure and a stock price decline following the report of financial results and the "impact" of lower demand and inventory build-up reported in the financial statements).

---

[12]     It is also worth noting that City of Westland Police and Fire Retirement System filed the initial action on January 12, 2012.  It did not rush to court after the August 5-8, 2011 disclosure to capture the entire August 8, 2011 stock price decline nor did it rush to court after the October 6, 2011 disclosure and stock price decline.  Instead, the January 12, 2012 filing date was 98 days following the October 6, 2011 decline – eight days beyond the Private Securities Litigation Reform Act of 1995 bounce-back period limiting damages.  15 U.S.C. §78u-4(e)(1),(2).

Notwithstanding the August 5, 2011 disclosure and the August 8, 2011 stock price decline, the October 6, 2011 disclosure and October 7, 2011 stock price decline, if proven, would show that plaintiff's loss was caused by the alleged misstatements as opposed to intervening (or coinciding) events. *See Lentell*, 396 F.3d at 174. Defendants' contentions that a loss or stock price decline was due to a market-wide phenomenon is typically left for proof at trial. *Emergent Capital*, 343 F.3d at 197. At that point, plaintiff would have to prove, that plaintiff's loss was in fact caused by the misrepresentations. As discussed above, an event study will show that loss causation can be proven.

## IV.    CONCLUSION

For these reasons, plaintiff respectfully requests that the Court grant partial reconsideration of the February 28 Order as described herein.

DATED:  March 14, 2013                         Respectfully submitted,

                                                              ROBBINS GELLER RUDMAN
                                                                & DOWD LLP
                                                              SHAWN A. WILLIAMS
                                                              ARMEN ZOHRABIAN


                                                              s/ Shawn A. Williams
                                                              SHAWN A. WILLIAMS

                                                              Post Montgomery Center
                                                              One Montgomery Street, Suite 1800
                                                              San Francisco, CA  94104
                                                              Telephone:  415/288-4545
                                                              415/288-4534 (fax)
                                                              shawnw@rgrdlaw.com
                                                              azohrabian@rgrdlaw.com

- 17 -

ROBBINS GELLER RUDMAN
  & DOWD LLP
SAMUEL H. RUDMAN
58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)
srudman@rgrdlaw.com

Lead Counsel for Plaintiff

- 18 -

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 14, 2013, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I caused to be mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on March 14, 2013.

s/ Shawn A. Williams
_____
SHAWN A. WILLIAMS

ROBBINS GELLER RUDMAN
   & DOWD LLP
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA  94104
Telephone:  415/288-4545
415/288-4534 (fax)
E-mail: shawnw@rgrdlaw.com

## Mailing Information for a Case 1:12-cv-00256-LAK

### Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **John J. Clarke , Jr**
  john.clarke@dlapiper.com,DocketingNewYork@dlapiper.com

- **Kaitlin Teresa Farrell**
  ktfarrel@debevoise.com

- **Elliot Greenfield**
  egreenfield@debevoise.com

- **Timothy E. Hoeffner**
  timothy.hoeffner@dlapiper.com,dorinda.castro@dlapiper.com,DocketingNewYork@dlapiper.com,bonita.ortiz@dlapiper.com

- **Maeve L. O'Connor**
  moconnor@debevoise.com,mao-ecf@debevoise.com

- **Darren J. Robbins**
  e_file_sd@rgrdlaw.com

- **David Avi Rosenfeld**
  drosenfeld@rgrdlaw.com,e_file_ny@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Samuel Howard Rudman**
  srudman@rgrdlaw.com,e_file_ny@rgrdlaw.com,mblasy@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Shawn Anthony Williams**
  swilliams@rgrdlaw.com,aelishb@rgrdlaw.com,khuang@rgrdlaw.com,ptiffith@rgrdlaw.com,e_file_sd@rgrdlaw.com,e_file_sf@rgrdlaw.com

- **Armen Zohrabian**
  azohrabian@rgrdlaw.com

- **Jason Allen Zweig**
  jasonz@hbsslaw.com,peterb@hbsslaw.com,reed@hbsslaw.com

### Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

```
Thomas C. Michaud
'
```