UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————— x

CITY OF WESTLAND POLICE AND FIRE   :   Civil Action No. 1:12-cv-00256-LAK
RETIREMENT SYSTEM, Individually and on  :
Behalf of All Others Similarly Situated,    :   CLASS ACTION
                                                :
                    Plaintiff,    :   MEMORANDUM OF LAW IN SUPPORT
                                                :   OF MOTION FOR LEAVE TO FILE THE
     vs.                             :   [PROPOSED] SECOND AMENDED CLASS
                                                  :   ACTION COMPLAINT FOR VIOLATION
METLIFE INC., et al.,            :   OF THE FEDERAL SECURITIES LAWS
                                              :
                 Defendants.    :
                                                :

———————————————————— x

822371_1

**TABLE OF CONTENTS**

**Page**

I.     PRELIMINARY STATEMENT ...................................................................................1

II.    PROCEDURAL HISTORY.......................................................................................1

III.   PLAINTIFF SHOULD BE GRANTED LEAVE TO AMEND ........................................2

       A.     Legal Standard .........................................................................................2

              1.     The PSAC Cures Pleading Deficiencies Identified by the Court
                     Regarding Loss Causation ..............................................................6

              2.     The PSAC Makes Several Clarifications ....................................................10

IV.    CONCLUSION...................................................................................................10

822371_1

**TABLE OF AUTHORITIES**

**Page**

**CASES**

*Catton v. Defense Tech. Sys., Inc.*,
    No. 05 Civ. 6954(SAS),
    2006 WL 27470 (S.D.N.Y. Jan. 3, 2006) ................................................................................6

*Cortec Indus., Inc. v. Sum Holding L.P.*,
    949 F.2d 42 (2d Cir. 1991)....................................................................................................3

*Foman v. Davis*,
    371 U.S. 178, 83 S. Ct. 227 (1962)....................................................................................2, 3

*Holmes v. Grubman*,
    568 F.3d 329 (2d Cir. 2009)..................................................................................................3

*In re Bear Stearns Cos., Inc. Sec., Derivative, and ERISA Litig.*,
    No. 08 MDL 1963,
    2011 WL 4072027 (S.D.N.Y. Sept. 13, 2011)......................................................................5

*In re Initial Pub. Offering Sec. Litig.*,
    241 F. Supp. 2d 281 (S.D.N.Y. 2003)................................................................................4, 9

*In re PXRE Grp., Ltd. Sec. Litig.*,
    600 F. Supp. 2d 510 (S.D.N.Y. 2009)...................................................................................3

*In re Rhodia S.A. Sec. Litig.*,
    531 F. Supp. 2d 527 (S.D.N.Y. 2007)...................................................................................6

*In re Sec. Capital Assurance, Ltd. Sec. Litig.*,
    729 F. Supp. 2d 569 (S.D.N.Y. 2010).........................................................................5, 6, 7, 8

*In re Winstar Commc'ns*,
    No. 01 CV 3014(GBD),
    2006 WL 473885 (S.D.N.Y. Feb. 27, 2006)..........................................................................5

*Louros v. Kreicas*,
    No. 03 Civ. 1514(LAK),
    2003 WL 22353979 (S.D.N.Y. Oct. 15, 2003) ....................................................................5

*Panther Partners Inc. v. Ikanos Commc'ns, Inc.*,
    347 F. App'x 617 (2d Cir. 2009) ..........................................................................................4

*Panther Partners, Inc. v. Ikanos Commc'ns, Inc.*,
    681 F.3d 114 (2d Cir. 2012)..................................................................................................4

822371_1

**Page**

*Rachman Bag Co. v. Liberty Mut. Ins. Co.*,
    46 F.3d 230 (2d Cir. 1995)..................................................................................................3

*Ronzani v. Sanofi S.A.*,
    899 F.2d 195 (2d Cir. 1990)...............................................................................................3

*Ross v. A.H. Robins Co.*,
    607 F.2d 545 (2d Cir. 1979)...............................................................................................3

*Ruotolo v. City of New York*,
    514 F.3d 184 (2d Cir. 2008)...............................................................................................2


**STATUTES, RULES AND REGULATIONS**

Federal Rules of Civil Procedure
    Rule 15(a)(2) .............................................................................................................1, 2, 5


**SECONDARY AUTHORITIES**

Madge S. Thorsen, Richard A. Kaplan & Scott Hakala, *Rediscovering the
Economics of Loss Causation*, 6 J. Bus. & Sec. L. 93 (2006) ..........................................7

822371_1

Pursuant to Rule 15(a)(2) of the Federal Rules of Civil Procedure, Lead Plaintiff, Central States, Southeast and Southwest Areas Pension Fund ("Plaintiff"), respectfully submits this memorandum of law in support of its motion for leave to file the [Proposed] Second Amended Class Action Complaint for Violation of the Federal Securities Laws ("PSAC") (attached as Exhibit A to the Declaration of Shawn A. Williams in Support of Plaintiff's Motion for Leave to File the [Proposed] Second Amended Class Action Complaint for Violation of the Federal Securities Laws ("Williams Decl."). Fed. R. Civ. P. 15(a)(2). For the convenience of the Court, we have attached the redline comparison of the PSAC to the Amended Class Action Complaint for Violation of the Federal Securities Laws ("Amended Complaint") (attached as Exhibit B to the Williams Decl.).

## I.   PRELIMINARY STATEMENT

Plaintiff respectfully requests leave to file the PSAC to address the loss causation pleading deficiencies this Court articulated with respect to the Amended Complaint's Securities Exchange Act of 1934 ("Exchange Act") claim. The PSAC strengthens the loss causation allegations for plaintiff's Exchange Act claims. PSAC, ¶¶133-151, 180-192. Plaintiff respectfully submits that the PSAC demonstrates that granting leave to amend would not be futile and respectfully requests that the Court order it filed.

## II.   PROCEDURAL HISTORY

On May 14, 2012, plaintiff filed its Amended Complaint alleging violations of the anti-fraud provisions of the federal securities laws on behalf of purchasers of the common stock of MetLife, Inc. ("MetLife" or the "Company") between February 2, 2010 and October 6, 2011 (inclusive, the "Class Period"). Dkt. No. 20. The Amended Complaint was also brought on behalf of all persons who purchased or acquired MetLife common stock pursuant or traceable to the Company's August

3, 2010 public offering of 75 million shares of common stock and MetLife's March 4, 2011 public offering of 68.5 million shares of its common stock, respectively.

The Amended Complaint was brought against MetLife, the Individual Defendants (collectively, "MetLife Defendants") and the Underwriter Defendants.

On August 3, 2012, both the MetLife Defendants and the Underwriter Defendants filed motions to dismiss the Amended Complaint.  Dkt. Nos. 39, 43.  Plaintiff filed a consolidated opposition to these motions to dismiss on September 17, 2012.  Dkt. No. 45.  On October 17, 2012, the MetLife Defendants and the Underwriter Defendants filed their respective replies.  Dkt. Nos. 47-48.  On February 28, 2013, the Court entered a Memorandum Opinion (the "February 28 Order").

The Court held, among other matters, that plaintiff failed to adequately allege a claim under §10(b) of the Exchange Act and Federal Rule of Civil Procedure ("Rule") Rule 10b-5 for failure to adequately allege loss causation.  February 28 Order at 12-16.

## III.     PLAINTIFF SHOULD BE GRANTED LEAVE TO AMEND

### A.     Legal Standard

Under Rule 15(a)(2), """"leave [to amend] shall be freely given when justice so requires.""" *Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008) (alteration in original); Fed. R. Civ. P. 15(a)(2).  The Supreme Court has held that the "mandate" of Rule 15(a)(2) to freely grant leave to amend "is to be heeded." *Foman v. Davis*, 371 U.S. 178, 182, 83 S. Ct. 227, 230 (1962).  While recognizing that granting an opportunity to amend is within the discretion of the district court, the Supreme Court stated:

> If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits.  In the absence of any apparent or declared reason – such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing

822371_1

party by virtue of allowance of the amendment, futility of amendment, etc. – the leave sought should, as the rules require, be "freely given."

*Id*.; *see also Holmes v. Grubman*, 568 F.3d 329, 334 (2d Cir. 2009); *see also In re Lehman Brothers Sec. and ERISA Litig.*, 1:09-md-02017-LAK, slip op. (S.D.N.Y. Sept. 8, 2010) (granting plaintiff's motion to alter or amend judgment to provide dismissal was without prejudice and permitting plaintiffs to amend their complaint) (attached as Exhibit C to the Williams Decl.); *In re PXRE Grp., Ltd. Sec. Litig.*, 600 F. Supp. 2d 510, 523-24 (S.D.N.Y. 2009) (considering futility of amendment, along with foregoing factors).

An "outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules." *See Foman v. Davis*, 371 U.S. at 182, 83 S. Ct. at 230 ("The Court of Appeals also erred in affirming the District Court's denial of petitioner's motion to vacate the judgment in order to allow amendment of the complaint. As appears from the record, the amendment would have done no more than state an alternative theory for recovery"). Indeed, as the Second Circuit has noted, "[t]he Supreme Court has emphasized that amendment should normally be permitted, and has stated that refusal to grant leave without justification is 'inconsistent with the spirit of the Federal Rules.'" *Rachman Bag Co. v. Liberty Mut. Ins. Co.*, 46 F.3d 230, 234 (2d Cir. 1995) (citing *Foman*, 371 U.S. at 182, 83 S. Ct. at 230); *see also Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("It is the usual practice upon granting a motion to dismiss to allow leave to replead.")[1]; *Ronzani v. Sanofi S.A.*, 899 F.2d 195, 198 (2d Cir. 1990) ("'the usual practice is to grant leave to amend [a] complaint'"); *Ross v. A.H. Robins Co.*, 607 F.2d 545, 547 (2d Cir. 1979)

---

[1]     Citations are omitted and emphasis is added unless otherwise stated.

- 3 -

(affording plaintiff another opportunity to amend Exchange Act to comply with Rule 9(b) "because we are hesitant to preclude the prosecution of a possibly meritorious claim because of defects in the pleadings"); *In re Initial Pub. Offering Sec. Litig.*, 241 F. Supp. 2d 281, 397 (S.D.N.Y. 2003) (leave to replead should be granted when a complaint is dismissed).

Freely granting leave to amend is supported by the Second Circuit's decision in *Panther Partners, Inc. v. Ikanos Commc'ns, Inc.*, 681 F.3d 114, 115 (2d Cir. 2012). In *Panther Partners*, the operative complaint was the third to have been considered by the district court. *Id*. at 118. After dismissal of the first amended complaint, Panther Partners moved for reconsideration and leave to replead, which the district court denied. *Id*. The Second Circuit vacated the district court's judgment denying Panther Partners' motion for reconsideration and for leave to replead, holding that "'it seems to us possible that [Panther Partners] could allege additional facts that [defendant] knew . . . before filing the registration statement,'" and further urged the district court to "'consider all possible amendments' – not just 'proposed amendments' – in reassessing futility." *Id*. at 119. The Second Circuit also noted that since the Private Securities Litigation Reform Act of 1995 imposed heightened pleading requirements and because *Iqbal* and *Twombly* changed the "contours of the pleadings standard," courts should grant leave to amend liberally so that plaintiffs prosecuting securities fraud lawsuits have ample and fair opportunity to allege their claims. *See, e.g.*, *Panther Partners Inc. v. Ikanos Commc'ns, Inc.*, 347 F. App'x 617, 622 (2d Cir. 2009) (recognizing "that *Iqbal* and *Twombly* raised the pleading requirements substantially while this case was pending. Although plaintiff has had an opportunity to further amend its complaint after *Twombly* was decided, we proceed cautiously in light of the rapidly changing contours of the pleadings standard in order to ensure justice").

- 4 -

Plaintiff respectfully requests the Court to grant leave to file the PSAC in the interest of justice. Fed. R. Civ. P. 15(a)(2). First, there has been no bad faith or undue delay. This is plaintiff's first request for leave to amend. *In re Bear Stearns Cos., Inc. Sec., Derivative, and ERISA Litig.*, No. 08 MDL 1963, 2011 WL 4072027, at *3 (S.D.N.Y. Sept. 13, 2011) ("The Court's strong preference for allowing the amendment of dismissed complaints and the circumstances of Plaintiff's case, particularly [the] ACC's status as the first consolidated complaint and the revelation of new evidence, lead to the conclusion that justice requires the Court to grant Plaintiff's request for dismissal without prejudice."). As the motion for reconsideration filed concurrently articulates, plaintiff believed its Amended Complaint adequately alleged each element required to plead an Exchange Act claim. *See* Memorandum of Law in Support of Plaintiff's Motion for Partial Reconsideration of the Court's Memorandum Opinion Dated February 28, 2013. Furthermore, this request has been filed 14 days after entry of the Court's February 28 Order granting defendants' motions to dismiss.

Second, granting plaintiff leave to amend will not cause undue prejudice to defendants. No formal discovery has taken place in this action. *Bear Stearns*, 2011 WL 4072027, at *3; *In re Winstar Commc'ns*, No. 01 CV 3014(GBD), 2006 WL 473885, at *2 (S.D.N.Y. Feb. 27, 2006).

Third, as discussed more fully below, plaintiff's proposed amendment is not futile. *Louros v. Kreicas*, No. 03 Civ. 1514(LAK), 2003 WL 22353979, *2 (S.D.N.Y. Oct. 15, 2003) (granting leave to amend even where "[i]t very well may be that plaintiff will have difficulty establishing loss causation linking particular statements with particular securities transactions. For present purposes, however, it is sufficient to conclude that it cannot be said with certainty that plaintiff has failed adequately to allege loss causation and to satisfy the 'in connection with' requirement with respect to *any* of the alleged misstatements or omissions.") (emphasis in original); *see also In re Sec. Capital*

822371_1

*Assurance, Ltd. Sec. Litig.*, 729 F. Supp. 2d 569, 603 (S.D.N.Y. 2010) ("On these inter – and intra –

industry-wide phenomena, it is not likely that Plaintiffs will be able to establish loss causation.

Nonetheless, because the Court finds that amendment might not be futile, plaintiff is granted leave to

amend their Complaint."); *In re Rhodia S.A. Sec. Litig.*, 531 F. Supp. 2d 527, 551 (S.D.N.Y. 2007).

("Because the Complaint alleges that the price of Remaining Plaintiffs' shares dropped over the

course of the Putative Class Period, it would not be futile to grant plaintiff's leave to amend the

Amended Complaint to apportion particular drops in the shares' values to particular materialized

risks.); *Catton v. Defense Tech. Sys., Inc.*, No. 05 Civ. 6954(SAS), 2006 WL 27470, at *10

(S.D.N.Y. Jan. 3, 2006) ("To establish [loss causation], plaintiffs could mention the price of the

Company's stock on specific dates, indicating that the stock price went up after misstatements and

went down after disclosures.").

### 1.     The PSAC Cures Pleading Deficiencies Identified by the Court Regarding Loss Causation

The PSAC adequately alleges loss causation enhancing the loss causation allegations of the

Amended Complaint.  First, the PSAC adds allegations from a contemporaneous *Reuters* article on

October 6, 2011 whose first paragraph indicates that MetLife had taken a "$275 million in third-

quarter charges, in part to increase reserves for policies where it may know the holder is dead but no

claim has been filed" and concluded that "MetLife shares, which were the top gainer among S&P

insurance stocks on Thursday, fell 2.8 percent to $29.83 in after-hours trading on the news."  ¶143.

Second, the PSAC incorporates an event study which demonstrates loss causation.  ¶¶148-

149.  Particularly with respect to disclosures contained in MetLife's October 6, 2011 Form 8-K, the

event study concludes that MetLife's disclosure was in fact statically significant – far more than

what is required at the pleading stage.  *Sec. Capital*, 729 F. Supp. 2d at 600 n.5 (noting that plaintiffs

were not required to conduct an event study at the motion to dismiss stage).  As alleged in the PSAC,

822371_1

because MetLife's Form 8-K was filed on October 6, 2011 at 4:24:44 p.m., after the market had

closed, it is possible to objectively assess the significance of the disclosures contained therein by

analyzing MetLife's stock price reaction to the negative disclosure using an event study.[2]  ¶¶148-

149.  Using the event study methodology, with the S&P 500 as the market index (per MetLife's

2011 Annual Report) and the S&P 500 Insurance index as the insurance industry index (also per

MetLife's 2011 Annual Report), the October 7, 2011 price decline is statistically significant.[3]  *Id.*

---

[2]      An event study is a regression analysis which measures the effect of an event like a company's earnings announcement on its stock price and is useful in assessing loss causation and materiality.  *See* Madge S. Thorsen, Richard A. Kaplan & Scott Hakala, *Rediscovering the Economics of Loss Causation*, 6 J. Bus. & Sec. L. 93, 99 (2006).  Event studies determine the historical relationship between a company's stock price and market and industry indices, and then analyze whether the price decline following the event is larger than the stock's normal historical price volatility.  Event studies are characterized as "[t]he gold standard, which is accepted by both courts and economists" when assessing materiality and causation.  *Id.*

[3]      **1 YEAR CONTROL PERIOD**

SUMMARY OUTPUT

| Regression Statistics | |
| --- | --- |
| Multiple R | 91.67% |
| R Square | 84.04% |
| Adjusted R Square | 83.85% |
| Standard Error | 0.96% |
| Observations | 254 |

ANOVA

| | df | SS | MS | F | Significance F |
| --- | --- | --- | --- | --- | --- |
| Regression | 3 | 0.12194 | 0.04065 | 438.85652 | 0.00000 |
| Residual | 250 | 0.02316 | 0.00009 | | |
| Total | 253 | 0.14510 | | | |

| | Coefficients | Standard Error | t Stat | P-value | Lower 95% | Upper 95% |
| --- | --- | --- | --- | --- | --- | --- |
| Intercept | (0.001) | 0.001 | (1.707) | 8.91% | (0.002) | 0.000 |
| S&P 500 | 1.587 | 0.047 | 33.502 | 0.00% | 1.494 | 1.681 |
| S&P 500 Insurance (residual) | 1.303 | 0.102 | 12.722 | 0.00% | 1.101 | 1.505 |
| Event: 10/7/2011 | (0.021) | 0.010 | **(2.087)** | **3.79%** | (0.040) | (0.001) |

822371_1

MetLife's stock price decline on October 7, 2011 was statistically significant at the 95% confidence level. *Id.* In this case, MetLife's October 7, 2011 stock price decline was unusually large with less than a 5% probability of occurring randomly, meaning that the decline is statistically significant and therefore most likely caused by the October 6, 2011 disclosures. *Id.* This means that the probability of a price decline equal to or greater than MetLife's actual price decline occurring randomly was less than 5%.[4] *Id.* The event study included in the PSAC was run with both a 120 day and a one year control period prior to October 7, 2011, both concluding that the decline was statistically significant.[5] *Id.* While it will ultimately be up to an expert to fully analyze this price decline and determine its cause, the PSAC's event study demonstrates that an amendment would not be futile.

## 120 DAY CONTROL PERIOD

SUMMARY OUTPUT

| Regression Statistics | |
|---|---|
| Multiple R | 93.80% |
| R Square | 87.98% |
| Adjusted R Square | 87.68% |
| Standard Error | 1.06% |
| Observations | 121 |

ANOVA

| | df | SS | MS | F | Significance F |
|---|---|---|---|---|---|
| Regression | 3 | 0.0970 | 0.0323 | 285.5808 | 0.0000 |
| Residual | 117 | 0.0132 | 0.0001 | | |
| Total | 120 | 0.1102 | | | |

| | Coefficients | Standard Error | t Stat | P-value | Lower 95% | Upper 95% |
|---|---|---|---|---|---|---|
| Intercept | (0.001) | 0.001 | (1.467) | 14.51% | (0.003) | 0.000 |
| S&P 500 | 1.603 | 0.058 | 27.622 | 0.00% | 1.488 | 1.718 |
| S&P 500 Insurance (residual) | 1.084 | 0.132 | 8.235 | 0.00% | 0.823 | 1.344 |
| Event: 10/7/2011 | (0.025) | 0.011 | **(2.228)** | **2.78%** | (0.046) | (0.003) |

---

[4]    This probability is called the p-value.

[5]    A statistically significant price movement is one that is unlikely to have occurred simply by chance. In other words, it likely was caused by the Company-specific information disclosed on that day, in this case the information contained in MetLife's Form 8-K.

822371_1

Third, the PSAC alleges that MetLife's August 5, 2011 disclosure, which occurred before the Standard & Poor's after-market announcement that it had downgraded the U.S. credit rating, contributed to the Company's stock price decline between Friday, August 5, 2011, and Monday, August 8, 2011. ¶¶22, 135, 139, 189, 239. Moreover, the PSAC also alleges that after trading hours on August 5, 2011, *Bloomberg* was reporting on a similar reserve charge taken by AIG on August 4, 2011. ¶138. The *Bloomberg* article also detailed the disclosures Prudential made that day, also after hours, on the scope of regulators' investigations into Prudential's compliance with unclaimed property laws. ¶138. As alleged in the PSAC, these material disclosures from MetLife plus the confluence of large insurance company disclosure of possible identical fraudulent conduct and announcement of the S&P downgrade contributed to the Company's stock price decline between Thursday, August 4, 2011 and Monday, August 8, 2011. ¶139.

Fourth, the PSAC more specifically alleges that a rough proportion of the loss attributable to MetLife's misleading statements can be derived from the percentage of the $275 million third-quarter reserve charge incurred in connection with the Social Security Administration's Death Master File disclosure MetLife announced on October 6, 2011. ¶¶150-151. The $115 million to $135 million charge comprised at least 45% of the total reserve charges. *See Initial Pub.*, 399 F. Supp. 2d at 309 (granting plaintiffs leave to amend to plead "'facts sufficient to apportion the losses between the disclosed and undisclosed portions of the risk that ultimately destroyed an investment'").

Fifth, the PSAC adds allegations with respect to the timing of the October 6, 2011 disclosures. ¶¶140, 148. As detailed therein, MetLife filed its Form 8-K at 4:24 p.m., after the market had closed. *Id.* Since MetLife's October 6, 2011 disclosures were made after the market had

- 9 -

closed, the price movements of insurers' stocks on October 6, 2011 are irrelevant to evaluating the

losses stemming from MetLife's after-market disclosure.

### 2.     The PSAC Makes Several Clarifications

As can be seen in Exhibit B to the Williams Decl. (the redline of proposed changes), the

PSAC contains a number of changes to clarify the Amended Complaint, including to the definitions

of the named parties, to comport with the Court's February 28 Order.

## IV.     CONCLUSION

For the foregoing reasons, plaintiff respectfully requests that the Court grant plaintiff's

motion for leave to file the PSAC.

DATED:  March 15, 2013                  ROBBINS GELLER RUDMAN
                                          & DOWD LLP
                                        SHAWN A. WILLIAMS
                                        ARMEN ZOHRABIAN


                                                s/ Shawn A. Williams
                                        _____
                                             SHAWN A. WILLIAMS

                                        Post Montgomery Center
                                        One Montgomery Street, Suite 1800
                                        San Francisco, CA  94104
                                        Telephone:  415/288-4545
                                        415/288-4534 (fax)
                                        shawnw@rgrdlaw.com
                                        azohrabian@rgrdlaw.com

                                        ROBBINS GELLER RUDMAN
                                          & DOWD LLP
                                        SAMUEL H. RUDMAN
                                        58 South Service Road, Suite 200
                                        Melville, NY  11747
                                        Telephone:  631/367-7100
                                        631/367-1173 (fax)
                                        srudman@rgrdlaw.com

                                        Lead Counsel for Plaintiff

822371_1

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 15, 2013, I authorized the electronic filing of the foregoing

with the Clerk of the Court using the CM/ECF system which will send notification of such filing to

the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I

caused to be mailed the foregoing document or paper via the United States Postal Service to the non-

CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the

foregoing is true and correct.  Executed on March 15, 2013.

s/ Shawn A. Williams
SHAWN A. WILLIAMS

ROBBINS GELLER RUDMAN
 & DOWD LLP
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA  94104
Telephone:  415/288-4545
415/288-4534 (fax)
E-mail: shawnw@rgrdlaw.com

822371_1

## Mailing Information for a Case 1:12-cv-00256-LAK

**Electronic Mail Notice List**

The following are those who are currently on the list to receive e-mail notices for this case.

- **John J. Clarke , Jr**
  john.clarke@dlapiper.com,DocketingNewYork@dlapiper.com

- **Kaitlin Teresa Farrell**
  ktfarrel@debevoise.com

- **Elliot Greenfield**
  egreenfield@debevoise.com

- **Timothy E. Hoeffner**
  timothy.hoeffner@dlapiper.com,dorinda.castro@dlapiper.com,DocketingNewYork@dlapiper.com,bonita.ortiz@dlapiper.com

- **Maeve L. O'Connor**
  moconnor@debevoise.com,mao-ecf@debevoise.com

- **Darren J. Robbins**
  e_file_sd@rgrdlaw.com

- **David Avi Rosenfeld**
  drosenfeld@rgrdlaw.com,e_file_ny@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Samuel Howard Rudman**
  srudman@rgrdlaw.com,e_file_ny@rgrdlaw.com,mblasy@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Shawn Anthony Williams**
  swilliams@rgrdlaw.com,aelishb@rgrdlaw.com,khuang@rgrdlaw.com,ptiffith@rgrdlaw.com,e_file_sd@rgrdlaw.com,e_file_sf@rgrdlaw.com

- **Armen Zohrabian**
  azohrabian@rgrdlaw.com

- **Jason Allen Zweig**
  jasonz@hbsslaw.com,peterb@hbsslaw.com,reed@hbsslaw.com

**Manual Notice List**

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

Thomas C. Michaud
'