UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
:
CITY OF WESTLAND POLICE AND FIRE :
RETIREMENT SYSTEM, Individually and on Behalf of :
All Others Similarly Situated, :
:
:
Plaintiff, :
:
:
-against- : 12 Civ. 0256 (LAK)
:
METLIFE, INC., et al., :
:
Defendants. :
:
:
------------------------------------------------------------------------x

# JOINT MEMORANDUM OF LAW IN OPPOSITION TO
# PLAINTIFF'S MOTION FOR LEAVE TO REPLEAD

| | |
|---|---|
| Timothy E. Hoeffner | Maeve L. O'Connor |
| John J. Clarke, Jr. | Elliot Greenfield |
| Constance Tse | Anna A. Moody |
| DLA PIPER LLP (US) | DEBEVOISE & PLIMPTON LLP |
| 1251 Avenue of the Americas | 919 Third Avenue |
| New York, New York 10020 | New York, New York 10022 |
| (212) 335-4500 | (212) 909-6000 |
| | |
| *Attorneys for Defendants Citigroup Global Markets Inc., Credit Suisse Securities (USA) LLC, Goldman, Sachs & Co., HSBC Securities (USA) Inc., Merrill Lynch, Pierce, Fenner & Smith Incorporated and Wells Fargo Securities, LLC* | *Attorneys for Defendants MetLife, Inc., C. Robert Henrikson, William J. Wheeler, Peter M. Carlson, Steven A. Kandarian, William J. Mullaney, Sylvia Matthews Burwell, Eduardo Castro-Wright, Cheryl W. Grisé, R. Glenn Hubbard, John M. Keane, Alfred F. Kelly, Jr., James M. Kilts, Catherine R. Kinney, Hugh B. Price, David Satcher, Kenton J. Sicchitano and Lulu C. Wang* |

23864078v05

Defendants MetLife, Inc. ("MetLife" or the "Company"), C. Robert Henrikson, William J. Wheeler, Peter M. Carlson, Steven A. Kandarian, William J. Mullaney, Sylvia Matthews Burwell, Eduardo Castro-Wright, Cheryl W. Grisé, R. Glenn Hubbard, John M. Keane, Alfred F. Kelly, Jr., James M. Kilts, Catherine R. Kinney, Hugh B. Price, David Satcher, Kenton J. Sicchitano and Lulu C. Wang (collectively, the "MetLife Defendants") and Defendants Citigroup Global Markets Inc., Credit Suisse Securities (USA) LLC, Goldman, Sachs & Co., HSBC Securities (USA) Inc., Merrill Lynch, Pierce, Fenner & Smith Incorporated and Wells Fargo Securities, LLC (collectively, the "Underwriter Defendants") submit this joint memorandum in opposition to Plaintiff's motion for leave to file the proposed second amended complaint ("PSAC") pursuant to Federal Rule of Civil Procedure 15(a).

## PRELIMINARY STATEMENT

The Court should deny leave to file the PSAC because it suffers from the same deficiencies in its pleading of loss causation that led the Court to dismiss the Exchange Act claims in the Amended Complaint in the February 28, 2013 Memorandum Opinion (the "Opinion"). In particular, Plaintiff does nothing in the PSAC to disaggregate any losses allegedly caused by MetLife's August 5, 2011 or October 6, 2011 public statements from industry-wide events that caused the stock of MetLife and other major life insurers to move in lockstep. As a result, the PSAC would not revive Plaintiff's Exchange Act claims, and allowing it to be filed would be futile, resulting in a waste of resources for both the Court and the parties.

## ARGUMENT

**I.    LEAVE TO FILE THE PSAC SHOULD BE DENIED AS FUTILE.**

"[A] court is not required to prolong meritless litigation where leave to amend would be futile." *GS Equities, Ltd. v. Blair Ryan Co.*, No. 08 Civ. 1581, 2011 WL 3278909, * 5 (S.D.N.Y. July 26, 2011) (citing *Foman v. Davis*, 371 U.S. 178, 83 S.Ct. 227 (1962)). "[W]here the

plaintiff is unable to demonstrate that he would be able to amend his complaint in a manner which would survive dismissal, opportunity to replead is rightfully denied." *Schwamborn v. Cnty. of Nassau*, 348 Fed. Appx. 634, 635 (2d Cir. 2009) (quoting *Hayden v. Cnty. of Nassau*, 180 F.3d 42, 53 (2d Cir. 1999)); *see also Health-Chem Corp. v. Baker,* 915 F.2d 805, 810 (2d Cir. 1990) ("Where, as here, there is no merit in the proposed amendments, leave to amend should be denied.").

## II. THE PSAC DOES NOT REMEDY THE DEFICIENCIES IDENTIFIED BY THE COURT.

### A. PLAINTIFF DOES NOT PLAUSIBLY PLEAD LOSS CAUSATION IN CONNECTION WITH METLIFE'S AUGUST 5, 2011 FORM 10-Q.

Plaintiff seeks to recover for a drop in MetLife's stock price on August 8, 2011 – the day on which the "entire market dropped precipitously," and life insurers "suffered nearly uniform declines," after Standard and Poor's ("S&P") downgraded the credit rating of the United States to below triple-A for the first time in history. (Opinion 13.) In the Amended Complaint, Plaintiff suggested that the decline in MetLife's stock price on August 8 was due entirely to a single disclosure in MetLife's Form 10-Q, which had been filed *before* the market opened on Friday, August 5. In finding that Plaintiff had not plausibly alleged loss causation as to MetLife's August 5 disclosure, the Court held that Plaintiff must "allege factual matter sufficient to 'disaggregate those losses caused by the [downgrade in U.S. credit rating] from disclosures of the truth behind the alleged misstatements.'" (Opinion 15 (quoting *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 36 (2d Cir. 2000)) (alteration in original).)

In the PSAC, Plaintiff again fails to "allege facts sufficient to allow a factfinder to ascribe any portion of the loss to the alleged misstatements." (Opinion 15-16.) Instead, Plaintiff alleges *additional* events – other than the disclosure regarding unclaimed property audits in MetLife's Form 10-Q and S&P's historic downgrade – that it contends may have contributed to the price

2

decline on August 8, 2011.  Specifically, Plaintiff alleges in the PSAC that Prudential and AIG made disclosures in the same time frame that "contributed to the Company's stock price decline between Thursday, August 4, 2011 and Monday, August 8, 2011."  (PSAC ¶ 139.)  Suggesting that other external events (much less disclosures from companies other than MetLife) contributed to the decline in MetLife's stock price does nothing to disaggregate the stock decline that Plaintiff claims is attributable to the alleged corrective disclosure in MetLife's 10-Q from "marketwide phenomenon causing comparable losses to other investors."  (Opinion 15.)

Furthermore, the PSAC provides no answer to "the fact that, just *after* the alleged corrective disclosure, MetLife stock opened on August 5 at $.59 higher than its August 4 closing price, then closed only $.55 below," indicating no significant reaction by the investing public to the Form 10-Q.  (Opinion 15 (emphasis in original).)  Nor does the PSAC add "any basis for suggesting that the market considered these investigations to be material or the cause of the price drop."  (Opinion 15.)  As a result, the PSAC does not cure the deficiencies in Plaintiff's loss causation allegations regarding the August 5 disclosure.

### B. PLAINTIFF DOES NOT PLAUSIBLY PLEAD LOSS CAUSATION IN CONNECTION WITH METLIFE'S OCTOBER 6, 2011 FORM 8-K.

The PSAC likewise fails to disaggregate losses allegedly resulting from MetLife's October 6, 2011 Form 8-K from external influences that caused MetLife and its peer life insurers to trade in "lockstep."  (Opinion 15-16 (stock of life insurers "lost value in nearly equal proportions" and then "recovered nearly in full within a matter of days").)

Instead, Plaintiff continues to allege that the *entire* drop in stock price on October 7 is attributable to MetLife's Form 8-K, notwithstanding the Court's holding that the lockstep trading of MetLife and other life insurers renders that allegation implausible.  (Opinion 16.)  In so doing, Plaintiff perpetuates the flaw in the Amended Complaint.  Rather than disaggregating the loss

3

allegedly due to the DMF-related charge in the Form 8-K from broader market forces causing lockstep trading, Plaintiff simply divides the entire loss among the three charges in the Form 8-K based on their relative sizes: "To the extent plaintiff is obligated to ascribe a rough proportion of the loss from October 6, 2011 to October 7, 2011, at least 45% of the total charges were incurred in connection with the SSA-DMF." (PSAC ¶¶ 140, 150.) This allegation completely misses the point of the Court's ruling. The PSAC provides no facts which "would allow a factfinder to ascribe some rough proportion of the whole loss to [defendant's] misstatements," and therefore Plaintiff "ha[s] not alleged loss causation." *Lattanzio v. Deloitte & Touche LLP*, 476 F.3d 147, 158 (2d Cir. 2007).

Furthermore, Plaintiff's assumption that the relative contribution to a decline in stock price by a particular charge would be proportional to its size amounts to nothing more than an unbridled guess. Certain charges may have been greater than expected, whereas others may have been anticipated by the market or viewed as one-time events.[1] (PSAC ¶ 140.)

Plaintiff improperly seeks to bolster its inadequate loss causation allegations with the opinion of an anonymous expert – identified only as a "Certified Financial Analyst" – that the decline in MetLife's stock price on October 7, 2011 was "statistically significant" and "likely was caused by the company specific information contained in MetLife's Form 8-K."[2] (PSAC ¶¶ 148, 149.) Such "legal conclusions, deductions or opinions couched as factual allegations are not given a presumption of truthfulness" and are insufficient to survive a motion to dismiss.

---

[1] The October 6, 2011 Form 8-K also disclosed that the Company would take a charge of $80 to $100 million in catastrophe losses due to severe storm activity, which was stated to be more than double the $38 million plan provision for the quarter. *See also* fn. 5, *infra*.

[2] Indeed, the underlying statistical analysis itself – although presented as factual material – represents the opinion of Plaintiff's expert as to the appropriate reference indices, control period, and event windows, among other things. (PSAC ¶ 149.)

4

*Mason v. Am. Tobacco Co.*, 346 F.3d 36, 39 (2d Cir. 2003) (citation omitted). Instead of alleging *facts* sufficient to plead loss causation, as the law requires, Plaintiff improperly and prematurely relies upon expert opinion and seeks to jump ahead to expert discovery, stating: "Ultimately, it will be up to an expert to fully analyze this price decline and determine its cause." (PSAC ¶ 149.) However, "[a] securities plaintiff cannot plead a causal connection in terms of plaintiffs' mere hope of eventually prevailing in a battle of experts." *In re Intelligroup Sec. Litig.*, 468 F. Supp. 2d 670, 703 (D.N.J. 2006).

In any event, the statistical analysis presented in the PSAC does not cure the deficiencies identified by the Court because it does not even attempt to address the lockstep trading of MetLife's stock with that of its peer life insurance companies. (PSAC ¶¶ 148-149.) Instead, it merely compares the decline in MetLife's stock price on October 7, 2011 with its own average, historical movement relative to the full S&P 500 Index and the S&P Insurance Index, which includes a broad range of insurance companies operating fundamentally different businesses.[3] In light of this lockstep trading, as the Court already determined, it is implausible to suggest that MetLife's October 6, 2011 Form 8-K caused the drop in its stock price.

Nor do the two news articles cited in the PSAC suggest that the market considered the announcement of the $115-$135 million charge to be material. These articles simply repeat the information contained in MetLife's October 6, 2011 Form 8-K and note that, at one point during the relatively illiquid after-hours trading period that day, MetLife's stock was down 2.8 percent. (PSAC ¶ 143.) As noted in the MetLife Defendants' motion to dismiss, however, MetLife stock opened slightly up on August 7, as did the other large life insurers referenced in the Court's

---

[3] A list of the constituents of the S&P Insurance Index is available at http://us.spindices.com/indices/equity/sp-insurance-select-industry-index. The index is comprised of a wide range of insurance companies, including property and casualty insurers, financial guarantors, D&O insurers, and reinsurers.

23864078v05

Opinion in roughly equal proportions: MetLife opened up 0.8%, Prudential opened up 0.8%, Lincoln National opened up 0.9%, and AFLAC opened up 0.5%.[4] (Memorandum of Law in Support of the MetLife Defendants' Motion to Dismiss the Amended Complaint, Docket No. 43, ("MetLife Mem.") at 14.) The PSAC contains no allegation plausibly suggesting a causal relation between the $115-$135 million charge and a decline in MetLife's stock price.[5]

## CONCLUSION

For the foregoing reasons, leave to amend the Amended Complaint should be denied as futile.

---

[4]  Stock prices on October 6-7, 2011 are available for Prudential (PRU) at https://www.google.com/finance/historical?cid=665712&startdate=Oct+6%2C+2011&enddate=Oct+7%2C+2011, for Lincoln National (LNC) at https://www.google.com/finance/historical?cid=21524&startdate=Oct+6%2C+2011&enddate=Oct+7%2C+2011, and for AFLAC (AFL) at https://www.google.com/finance/historical?cid=1044&startdate=Oct+6%2C+2011&enddate=Oct+7%2C+2011.

[5]  The plausibility of any allegation that the decline of MetLife's stock on October 7 was caused by the October 6 disclosure is further undercut by the fact that (*i*) the market had already been warned in MetLife's August 5 Form 10-K that the costs of the unclaimed property audits and investigations "could be substantial," a disclosure that had no significant effect on the Company's stock price, and (*ii*) MetLife's stock price *rose* on the day the multi-state settlement of those audits and investigations were announced. (Opinion 13-14; MetLife Mem. 8.)

23864078v05

| | |
|---|---|
| Dated: New York, New York<br>March 28, 2013 | DEBEVOISE & PLIMPTON LLP<br><br>By:  /s/ Maeve L. O'Connor<br><br>Maeve L. O'Connor (*mloconnor@debevoise.com*)<br>Elliot Greenfield (*egreenfield@debevoise.com*)<br>Anna A. Moody (*amoody@debevoise.com*)<br><br>919 Third Avenue<br>New York, New York 10022<br>Tel: (212) 909-6000<br>Fax: (212) 909-6836<br><br>*Attorneys for Defendants MetLife, Inc., C. Robert Henrikson, William J. Wheeler, Peter M. Carlson, Steven A. Kandarian, William J. Mullaney, Sylvia Matthews Burwell, Eduardo Castro-Wright, Cheryl W. Grisé, R. Glenn Hubbard, John M. Keane, Alfred F. Kelly, Jr., James M. Kilts, Catherine R. Kinney, Hugh B. Price, David Satcher, Kenton J. Sicchitano and Lulu C. Wang* |
| Dated: New York, New York<br>March 28, 2013 | DLA PIPER LLP (US)<br><br>By:  /s/ Timothy E. Hoeffner<br><br>Timothy E. Hoeffner (timothy.hoeffner@dlapiper.com)<br>John J. Clarke, Jr. (john.clarke@dlapiper.com)<br>Constance Tse (constance.tse@dlapiper.com)<br><br>1251 Avenue of the Americas<br>New York, New York 10020-1104<br>Tel: (212) 335-4500<br>Fax: (212) 335-4501<br><br>*Attorneys for Defendants Citigroup Global Markets Inc., Credit Suisse Securities (USA) LLC, Goldman, Sachs & Co., HSBC Securities (USA) Inc., Merrill Lynch, Pierce, Fenner & Smith Incorporated and Wells Fargo Securities, LLC* |