UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------ x
:
CITY OF WESTLAND POLICE AND FIRE :
RETIREMENT SYSTEM, Individually and on Behalf of :
All Others Similarly Situated, :
:
Plaintiff, :
:
-against- : 12 Civ. 0256 (LAK)
:
METLIFE, INC., et al., :
:
Defendants. :
:
------------------------------------------------------------------ x

# REPLY MEMORANDUM OF LAW IN SUPPORT OF
# DEFENDANTS' JOINT MOTION FOR RECONSIDERATION

| | |
|---|---|
| Timothy E. Hoeffner | Maeve L. O'Connor |
| John J. Clarke, Jr. | Elliot Greenfield |
| Constance Tse | Anna A. Moody |
| DLA PIPER LLP (US) | DEBEVOISE & PLIMPTON LLP |
| 1251 Avenue of the Americas | 919 Third Avenue |
| New York, New York 10020 | New York, New York 10022 |
| (212) 335-4500 | (212) 909-6000 |
| | |
| *Attorneys for Defendants Citigroup Global Markets Inc., Credit Suisse Securities (USA) LLC, Goldman, Sachs & Co., HSBC Securities (USA) Inc., Merrill Lynch, Pierce, Fenner & Smith Incorporated and Wells Fargo Securities, LLC* | *Attorneys for Defendants MetLife, Inc., C. Robert Henrikson, William J. Wheeler, Peter M. Carlson, Steven A. Kandarian, William J. Mullaney, Sylvia Matthews Burwell, Eduardo Castro-Wright, Cheryl W. Grisé, R. Glenn Hubbard, John M. Keane, Alfred F. Kelly, Jr., James M. Kilts, Catherine R. Kinney, Hugh B. Price, David Satcher, Kenton J. Sicchitano and Lulu C. Wang* |

23868643v02

Defendants MetLife, Inc. ("MetLife" or the "Company"), C. Robert Henrikson, William J. Wheeler, Peter M. Carlson, Steven A. Kandarian, William J. Mullaney, Sylvia Matthews Burwell, Eduardo Castro-Wright, Cheryl W. Grisé, R. Glenn Hubbard, John M. Keane, Alfred F. Kelly, Jr., James M. Kilts, Catherine R. Kinney, Hugh B. Price, David Satcher, Kenton J. Sicchitano and Lulu C. Wang (collectively, the "MetLife Defendants") and Defendants Citigroup Global Markets Inc., Credit Suisse Securities (USA) LLC, Goldman, Sachs & Co., HSBC Securities (USA) Inc., Merrill Lynch, Pierce, Fenner & Smith Incorporated and Wells Fargo Securities, LLC (collectively, the "Underwriter Defendants") submit this reply memorandum in support of their joint motion for reconsideration pursuant to Federal Rule of Civil Procedure 54(b) and Local Civil Rule 6.3.[1]

## ARGUMENT

Plaintiff's opposition brief leaves no doubt that reconsideration is appropriate here, as Plaintiff acknowledges that there is no well-pleaded allegation that MetLife experienced an $80 million reserve shortfall in connection with its 2007 DMF cross-check, and Plaintiff fails to identify any factual allegations from which the Court could reasonably infer such a shortfall.

### I. THERE IS NO WELL-PLEADED ALLEGATION OF AN $80 MILLION RESERVE SHORTFALL.

Plaintiff offers no defense of its baseless and misleading allegation that "according to the multi-state Regulatory Settlement Agreement, in 2007 MetLife performed a match across certain of its insurance records using the SSA-DMF and had discovered over $80 million in IBNR claims *that had not been reserved for*." (Amended Complaint ¶ 162 (emphasis added).) Plaintiff

---

[1] Throughout this brief, "Reconsideration Memorandum" or "Recons. Mem." refers to the "Joint Memorandum of Law in Support of the MetLife Defendants' Motion for Reconsideration" (Docket No. 56), "Reconsideration Opposition" or "Recons. Opp'n" refers to "Lead Plaintiff's Memorandum of Law in Support of Opposition to Defendants' Joint Motion for Reconsideration" (Docket No. 61).

does not dispute that the Regulatory Settlement Agreement includes no reference to MetLife's reserves; nor does Plaintiff dispute that it acknowledged elsewhere in the Amended Complaint and in its briefing that the $80 million amount represented unclaimed benefits, not a reserve shortfall.

As set forth in Defendants' opening brief, this single misleading allegation appears to be the basis on which the Court determined that MetLife had no reason to believe its IBNR estimates:

> The amended complaint alleges that after running the SSA-DMF against a portion of the life insurance policies in 2007 and discovering *a reserve shortfall of $80 million dollars*, MetLife knew that its method for setting IBNR reserves over the previous several decades had not accounted for all deceased policy holders. *As a result*, the company knew that its estimated IBNR reserves were insufficient to meet the companies life insurance policy obligations, or at least was aware that it had no reasonable basis for believing the estimates.

(Opinion 18 (emphasis added); *see also id.* 20.) Based on this determination, the Court went on to find that, as to MetLife's duty to disclose the multi-state investigations, the Company "reasonably should have expected that the state investigations would cause MetLife to alter its IBNR reserves." (Opinion 21.)

Rather than identify a basis for its allegation of an $80 million reserve shortfall in paragraph 162 of the Amended Complaint, Plaintiff simply asserts that Court did not rely on that allegation. (Recons. Opp'n 4.) However, none of the other allegations cited by Plaintiff indicate a reserve shortfall. (Recons. Opp'n 3-4 (citing Amended Complaint ¶¶ 86, 106, 120-123, 140).) In fact, absent Plaintiff's single misleading assertion in paragraph 162, nothing in the Amended

2

Complaint indicates that MetLife discovered an $80 million reserve shortfall in connection with the 2007 DMF cross-check.[2]

## II. THERE ARE NO FACTUAL ALLEGATIONS FROM WHICH TO INFER AN $80 MILLION RESERVE SHORTFALL.

Having failed to cite any well-pleaded allegation of an $80 million reserve shortfall, Plaintiff falls back on the argument that the Court must have *inferred* the existence of an $80 million reserve shortfall from other allegations in the Amended Complaint. (Recons. Opp'n 5-6.) As a preliminary matter, this assertion lacks credibility, as the Court expressly stated: "*The amended complaint alleges* that after running the SSA-DMF against a portion of the life insurance policies in 2007 and discovering a reserve shortfall of $80 million dollars . . . ." (Opinion 18 (emphasis added).)

In any case, Plaintiff's arguments on this point are without merit. *First*, the obvious and important difference between "an $80 million reserve shortfall and $80 million in unclaimed benefits" – which Plaintiff correctly states is the crux of Defendants' motion – is not a "tortured distinction." (Recons. Opp'n 5.) Without a well-pleaded allegation of an $80 million reserve shortfall in 2007, there are no factual allegations from which to conclude that MetLife had no reasonable basis for its IBNR reserves.

*Second*, in its citation to testimony by Todd Katz, Plaintiff appears to misunderstand the difference between liabilities and reserves. (Recons. Opp'n 5-6.) To the extent that MetLife discovered $80 million in unclaimed benefits, that amount would constitute a liability, but it

---

[2] Unable to identify a well-pleaded allegation of an $80 million reserve shortfall – or any other basis to conclude that MetLife did not believe its IBNR reserves were adequate – Plaintiff argues in the alternative that MetLife had a duty to disclose the multi-state investigations under Item 303 based solely on "the potential for state fines due to MetLife's failure to comply with unclaimed property laws." (Recons. Opp'n 3.) This argument fails because, among other reasons, Plaintiff alleges no facts showing that MetLife reasonably believed any such fines would have "a material favorable or unfavorable impact on net sales or revenues or income from continuing operations." (Opinion 21 (quoting 17 C.F.R. § 229.303).)

would not affect the Company's "reported assets and financial condition" so long as the Company's reserves were adequate. (Recons. Opp'n 5-6.) As Plaintiff explained in the Amended Complaint, MetLife took a charge to earnings in October 2011 because its "liabilities were in excess of its reserves." (Amended Complaint ¶¶ 19, 86(e), 120(c).) The Amended Complaint includes no factual allegation stating how the $80 million in unclaimed benefits discovered in the 2007 DMF cross-check compared with MetLife's IBNR reserves, which estimate such incurred but unreported claims.

*Third*, there is no reasonable basis to infer from MetLife's October 2011 $117 million charge to reserves in connection with a DMF cross-check of all of its life insurance policies that the Company experienced an $80 million reserve shortfall in connection with a more limited DMF cross-check four years earlier. (Recons. Opp'n 6; Opinion 5, 9.) Plaintiff's argument is circular bootstrapping: Plaintiff asks the Court to infer a 2007 reserve shortfall from the fact of the 2011 reserve shortfall, so that it can then ask the Court to infer that the 2011 reserve shortfall was obvious in light of the 2007 reserve shortfall.

### III. DEFENDANTS' MOTION FOR RECONSIDERATION IS PROPER.

Reconsideration is appropriate here because there exists "the need to correct a clear error" – the Court's apparent reliance on a single unsupported and misleading allegation. *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992). Plaintiff's contention that Defendants have "waived any argument that ¶ 162 was misleading" ignores the fact that throughout the briefing on Defendants' motions to dismiss, both Plaintiffs and Defendants consistently and correctly referred to the $80 million amount as "unreported claims" or "unpaid benefits," with no mention of a reserve shortfall. (Recons. Opp'n 7; Recons. Mem. 3 (citing motion to dismiss briefing).) It is absurd to suggest that Defendants were required to do more to refute an argument that Plaintiff did not advance. Plaintiff cannot escape the

consequences of its own misleading allegation – an allegation it does not attempt to defend – by arguing waiver.

## CONCLUSION

For the foregoing reasons the Amended Complaint should be dismissed with prejudice as against all of the Defendants.

Dated:  New York, New York
        April 4, 2013

DEBEVOISE & PLIMPTON LLP

By:   /s/ Maeve L. O'Connor

Maeve L. O'Connor (*mloconnor@debevoise.com*)
Elliot Greenfield (*egreenfield@debevoise.com*)
Anna A. Moody (*amoody@debevoise.com*)

919 Third Avenue
New York, New York 10022
Tel: (212) 909-6000
Fax: (212) 909-6836

*Attorneys for Defendants MetLife, Inc., C. Robert Henrikson, William J. Wheeler, Peter M. Carlson, Steven A. Kandarian, William J. Mullaney, Sylvia Matthews Burwell, Eduardo Castro-Wright, Cheryl W. Grisé, R. Glenn Hubbard, John M. Keane, Alfred F. Kelly, Jr., James M. Kilts, Catherine R. Kinney, Hugh B. Price, David Satcher, Kenton J. Sicchitano and Lulu C. Wang*

| | |
|---|---|
| Dated: New York, New York<br>April 4, 2013 | DLA PIPER LLP (US)<br><br>By:   /s/ Timothy E. Hoeffner<br><br>Timothy E. Hoeffner (*timothy.hoeffner@dlapiper.com)*<br>John J. Clarke, Jr. (*john.clarke@dlapiper.com*)<br>Constance Tse (*constance.tse@dlapiper.com*)<br><br>1251 Avenue of the Americas<br>New York, New York 10020-1104<br>Tel: (212) 335-4500<br>Fax: (212) 335-4501<br><br>*Attorneys for Defendants Citigroup Global Markets Inc., Credit Suisse Securities (USA) LLC, Goldman, Sachs & Co., HSBC Securities (USA) Inc., Merrill Lynch, Pierce, Fenner & Smith Incorporated and Wells Fargo Securities, LLC* |

23868643v02