UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x
:
CITY OF WESTLAND POLICE AND FIRE      :
RETIREMENT SYSTEM,                    :
                                       :
            Plaintiff,                 :
                                       :
      v.                               :     Case No. 1:12-cv-00256-LAK
                                       :
                                       :
                                       :
METLIFE, INC., et al.,                 :
                                       :
            Defendants.                :
                                       :
------------------------------------------------------------x

# REPLY MEMORANDUM IN FURTHER SUPPORT OF
# UNDERWRITER DEFENDANTS' MOTION TO DISMISS

Dated: November 6, 2013

Timothy E. Hoeffner
John J. Clarke, Jr.
Constance Tse
DLA Piper LLP (US)
1251 Avenue of the Americas
New York, New York 10020-1104
Tel.: (212) 335-4500
Fax: (212) 335-4501

Attorneys for Defendants
 Citigroup Global Markets Inc., Credit Suisse
 Securities (USA) LLC, Goldman, Sachs & Co.,
 HSBC Securities (USA) Inc., Merrill Lynch,
 Pierce, Fenner & Smith Incorporated
 and Wells Fargo Securities, LLC

Table of Authorities

Page(s)

Cases

*Delta Holdings, Inc. v. Nat'l Distillers & Chem. Corp.*,
   945 F.2d 1226, 1229 (2d Cir. 1991) ................................................................................... 4

*Fait v. Regions Fin. Corp.*,
   655 F.3d 105 (2d Cir. 2011) ..................................................................................... *passim*

*Freeman Group v. Royal Bank of Scotland Group PLC*,
   No. 12-3642-cv, ___ F. App'x ___, 2013 WL 5340476 (2d Cir. Sept. 25, 2013) ............... 4

*Freidus v. Barclays Bank PLC*,
   No. 11-2665-cv, ___ F.3d ___, 2013 WL 4405291 (2d Cir. Aug. 19, 2013) ...................... 5

*In re Gen. Elec. Co. Sec. Litig.*,
   856 F. Supp. 2d 645 (S.D.N.Y. 2012) ................................................................................ 6

*Jacobson v. Peat, Marwick, Mitchell & Co.*,
   445 F. Supp. 518, 526 (S.D.N.Y. 1977) ............................................................................. 8

*NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*,
   693 F.3d 145 (2d Cir. 2012) ................................................................................................ 5

*NECA-IBEW Pension Tr. Fund v. Bank of Amer. Corp.*,
   No. 1:10-cv-0440-LAK, slip op. (S.D.N.Y. Mar. 16, 2012) ............................................. 6

Statutes, Rules and Regulations

17 C.F.R. § 229.303 ........................................................................................................... 3

Fed. R. Civ. P. 12(b)(6) ..................................................................................................... 1

Other Authorities

Statement of Financial Accounting Standards No. 154 (May 2005) ................................ 7

Defendants Citigroup Global Markets Inc., Credit Suisse Securities (USA) LLC, Goldman, Sachs & Co., HSBC Securities (USA) Inc., Merrill Lynch, Pierce, Fenner & Smith Incorporated and Wells Fargo Securities, LLC (the "Underwriter Defendants"), respectfully submit this reply memorandum in further support of their motion to dismiss with prejudice all claims asserted against them in this action pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## PRELIMINARY STATEMENT

As with the second amended complaint itself, plaintiff's claims against the Underwriter Defendants under sections 11(a) and 12(a)(2) of the Securities Act of 1933 are an afterthought in its opposition brief. Most of the public statements by MetLife Inc. or other defendants that are discussed in plaintiff's opposition are irrelevant to the Securities Act claims, which are based only on offering materials for two MetLife common stock offerings in August 2010 and March 2011. Plaintiff's opposition fails to identify plausible allegations of misstatements or omissions that would support an actionable claim against the Underwriter Defendants and even fails to respond to many of the Underwriter Defendants' dismissal arguments.

*First*, plaintiff's opposition only reinforces the conclusion that its claims that MetLife misstated reserves estimates for incurred but not reported ("IBNR") life insurance claims are based entirely on hindsight. While plaintiff argues that the reserves were "misstatements of objective 'material fact'" that do not require plausible allegations of subjective falsity, *see* Pl. Opp. at 29, this Court already has considered and rejected that argument. *See* Memorandum Opinion entered on Feb. 28, 2013, at 17 [D.I. 52]. The existence of the "death master file" maintained by the Social Security Administration ("SSA-DMF") does not change the fact that IBNR reserves "necessarily require judgment." *Id.* Plaintiff therefore was required to plausibly allege not only that MetLife's reserves were "objectively false" at the time of each of the

offerings but also that MetLife did not believe the reserves at the time. *See Fait v. Regions Fin. Corp.*, 655 F.3d 105, 112-13 (2d Cir. 2011). The complaint fails to allege either.

Plaintiff does not identify any allegation in its complaint that would support an inference of subjective falsity. It argues that MetLife's 2007 cross-check of individual life insurance policies against the "SSA-DMF" "strongly suggested that its method of estimating reserves ignored an accumulation of thousands of deceased policyholders," Pl. Opp. at 29, but plaintiff now essentially concedes that it had no basis for alleging that MetLife "discovered over $80 million in IBNR claims that had not been reserved for" as the result of the 2007 review. Compl. ¶ 174. The fact that MetLife's earlier review of the SSA-DMF identified "$80 million in unclaimed benefits," Pl. Opp. at 29, says nothing about whether MetLife's IBNR reserves already took those unclaimed benefits into account.

Nor does MetLife's decision to strengthen its life insurance IBNR reserves in October 2011 support plaintiff's claim that those reserves were *objectively* false at the time of the offerings in August 2010 and March 2011. A "change in accounting estimate" is different than an accounting "error" and does not require a financial restatement. Plaintiff does not dispute that no restatement occurred or was required here. Indeed, plaintiff has not responded to this argument at all.

*Second*, in arguing that the offering materials failed to disclose incipient state regulatory inquiries into MetLife's escheatment practices and use of the SSA-DMF, plaintiff ignores the disclosures that actually were provided. The prospectus for each of the two challenged offerings warned investors that MetLife was subject to "various regulatory inquiries . . . from state and federal regulators and other authorities" that "could have a material adverse effect on our business, financial condition and results of operations." *See* Underwriters Mem. at 17 (collecting

citations). Plaintiff makes no mention of these disclosures in its opposition and does not attempt to argue that they were in any way inadequate. *See* Pl. Opp. at 30. Given plaintiff's own allegations showing that only limited regulatory activity had begun by the time of the offerings, the disclosures amply satisfied any disclosure obligation that might have then existed. *See* 17 C.F.R. § 229.303(a).

These are the only two categories of alleged misstatement at issue in the Securities Act claims despite plaintiff's effort to suggest otherwise. *See* Compl. ¶¶ 220(a), (b). Because plaintiff has failed to allege – or even articulate – a plausible basis for finding any actionable misstatement or omission in the offering materials, the Securities Act claims against the Underwriter Defendants should be dismissed with prejudice.

## ARGUMENT

### THE CLAIMS AGAINST THE UNDERWRITER DEFENDANTS SHOULD BE DISMISSED WITH PREJUDICE

Most of plaintiff's opposition is devoted to arguments concerning its claims of securities fraud against MetLife and related defendants under the Securities Exchange Act of 1934. The Securities Act claims, which are the only claims asserted against the Underwriter Defendants, receive only passing attention in two pages of plaintiff's thirty-seven page filing. Plaintiff fails to respond to many of the Underwriter Defendants' dismissal arguments, and where it has attempted to respond it fails to articulate any actionable misstatement or omission in the offering materials for the two MetLife common stock offerings that are the basis for those claims.

*First*, to avoid the need to allege "subjective falsity" for most of its Securities Act claims, plaintiff repeats its mistaken argument that it has challenged MetLife's IBNR reserves estimates as "misstatements of objective 'material fact'" as opposed to statements of belief. Pl. Opp. at 29. However, this Court already has held that IBNR reserves are accounting estimates that

"necessarily require judgment." *See* Memorandum Opinion at 17 (quoting *Delta Holdings, Inc. v. Nat'l Distillers & Chem. Corp.*, 945 F.2d 1226, 1229 (2d Cir. 1991)); *see also* Compl. ¶¶ 214, 217 (MetLife "derives estimates for the development of incurred but not reported claims principally from actuarial analyses of historical patterns of claims . . . ") (quoting prospectuses). As such, statements about those reserves are actionable under the Securities Act *only* if plaintiff can allege both their objective and subjective falsity. Memorandum Opinion at 17; *see Fait v. Regions Fin. Corp.*, 655 F.3d 105, 112-13 (2d Cir. 2011); *see also Freeman Group v. Royal Bank of Scotland Group PLC*, No. 12-3642-cv, ___ F. App'x ___, 2013 WL 5340476, at *3 (2d Cir. Sept. 25, 2013 ) (*per curiam*) (applying *Fait* in affirming dismissal of Securities Act claims where plaintiff failed to allege that bank defendant did not believe statements about the strength of its capital base or the benefits of acquiring another bank).

This conclusion is not altered by the availability of data from the SSA-DMF, as plaintiff contends. *See* Pl. Opp. at 29. To the contrary, "[t]he existence of the SSA-DMF does not make life insurance IBNR reserves a factual statement," as this Court already has held in this action. Memorandum Opinion at 17. The Social Security Administration itself acknowledges that the SSA-DMF contains errors, *see id.*, and its "master" list is not a substitute for actuarial analysis and judgment. *See Delta Holdings*, 945 F.2d at 1231 ("It must be emphasized that no actuarial method is so accurate that it eliminates conjecture in the calculation of IBNR liabilities.").

*Second*, plaintiff ignores the distinction between insufficient reserves and unclaimed benefits when it argues that "MetLife's match of the SSA-DMF only to its individual life business in 2007 strongly suggested that its method for estimating reserves ignored an accumulation of thousands of deceased policyholders, thereby failing to capture $80 million in *unclaimed benefits*." Pl. Opp. at 29 (emphasis added). Indeed, throughout its opposition

4

plaintiff attempts to substitute allegations that MetLife delayed escheatment of unclaimed insurance benefits to state treasuries for any allegation that MetLife knew that its IBNR reserves were understated. Whether or not the payment of insurance benefits was delayed in some instances is an entirely different question than whether MetLife had accounted for the same liabilities in its IBNR reserves. There is no allegation that would permit a reasonable inference that MetLife failed to account for the unclaimed benefits that were discovered in 2007, or that MetLife otherwise knew, that its IBNR reserves were inadequate at the time of the offerings.

In this regard, plaintiff's opposition does not attempt to justify the complaint's unsupported allegation that "in 2007 MetLife performed a match across certain of its insurance records using the SSA-DMF and discovered over $80 million in IBNR claims *that had not been reserved for . . .*" Compl. ¶ 174 (emphasis added). As the Underwriter Defendants have already noted, this allegation is not supported by the regulatory settlement agreement that plaintiff cites as its source, *id.; see* Compl. ¶ 160 (excerpt from settlement agreement), and it is entitled to no deference on this motion to dismiss. *See NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, 693 F.3d 145, 149 n.1 (2d Cir. 2012) (court need not accept an allegation that is "conclusory or contradicted by more specific allegations or documentary evidence"). This Court appears to have previously relied on the same misleading allegation in concluding that plaintiff had alleged subjective falsity with respect to statements concerning MetLife's IBNR reserves. *See* Memorandum Opinion at 18. Without that allegation, however, there is no fact alleged in the complaint that would support an inference that MetLife knowingly misstated its reserves.

*Third*, plaintiff erroneously relies on *Fait* and *Freidus v. Barclays Bank PLC*, No. 11-2665-cv, ___ F.3d ___, 2013 WL 4405291 (2d Cir. Aug. 19, 2013), for its contention that it has alleged subjective falsity notwithstanding its disclaimer of "intentional or reckless misconduct"

in support of its Securities Act claims. Pl. Opp. at 36; *see* Compl. ¶¶ 210, 248, 265. The decisions are uniform that such a disclaimer is fatal to an inference of subjective falsity. *See* Underwriters' Mem. at 11 (collecting citations). The Second Circuit did not alter that principle in either *Fait* or *Freidus*. To the contrary, the sections of those opinions that plaintiff attempts to rely on merely emphasized that pleading subjective falsity was required in order to allege *falsity* with respect to statements of belief and was not imposing a *scienter* requirement for Securities Act claims. *See Freidus*, 2013 WL 4405291, at *6; *Fait*, 655 F.3d at 112 n.5. As this Court has explained, when a complaint "affirmatively disclaims any assertion of fraud . . . there is no legally sufficient basis for concluding that the complaint adequately alleges that any of the statements of belief . . . was false." *NECA-IBEW Pension Tr. Fund v. Bank of Amer. Corp.*, No. 1:10-cv-0440-LAK, slip op. at 2 (S.D.N.Y. Mar. 16, 2012) (Kaplan, J.); *see In re Gen. Elec. Co. Sec. Litig.*, 856 F. Supp. 2d 645, 657 (S.D.N.Y. 2012) ("If Immelt had disbelieved this statement of opinion at the time he made it – in other words, if he had lied – then he would have engaged in a form of knowing misconduct. The SAC disclaimed all such allegations. In light of this disclaimer, it has not alleged subjective falsity."). Plaintiff's disclaimers here of "intentional or reckless misconduct" prevent any inference that MetLife did not believe its IBNR reserves estimates when it disclosed them in the offering materials.

*Fourth*, plaintiff does not respond to, and therefore concedes, the Underwriter Defendants' argument that it has not alleged the objective falsity of MetLife's IBNR reserves based solely on the fact that MetLife strengthened those reserves long after the challenged offerings. *See* Underwriters Mem. at 14-15. Plaintiff has not alleged (and it could not allege) that MetLife was required to restate its financial statements for the periods at issue. A restatement would have been required if there had been a material accounting "error" in

6

MetLife's reporting of its life insurance IBNR reserves.  *See* Statement of Financial Accounting Standards No. 154, ¶¶ 19, 25 (May 2005) (discussing treatment for "changes in accounting estimate" and for correction of "errors").

*Fifth*, with regard to its claim that the offering materials failed to apprise investors of state investigations into MetLife's use of the SSA-DMF, plaintiff does not dispute that the prospectus supplements for each of the two offerings expressly disclosed:

- that MetLife faced "a significant risk of litigation and regulatory investigations and actions in the ordinary course of operating our businesses";

- that MetLife's "pending legal and regulatory actions include proceedings specific to us and others generally applicable to business practices in the industries in which we operate";

- that MetLife was "subject to various regulatory inquiries, such as information requests, subpoenas and books and record examinations, from state and federal regulators and other authorities"; and

- that "[a] substantial legal liability or a significant regulatory action against us could have a material adverse effect on our business, financial condition and results of operations."

Declaration of Timothy D. Hoeffner dated Aug. 23, 2013, Exh. A at S-53-54, Exh. B at S-41-42. Given the timing of MetLife's interactions with state regulators, as they are alleged in the complaint, the disclosures that were provided were more than adequate to apprise investors of the risks that might arise in the future from the preliminary state regulatory inquiries into the use of the SSA-DMF that had been initiated by the time of the offerings.  *See* Underwriters Mem. at 17-20.  Plaintiff's opposition does not attempt to argue otherwise.

7

*Finally*, there is no Securities Act claim alleged in the second amended complaint based on "the manner in which . . . [MetLife's] mortality ratios were calculated and reported" in the offering materials, as plaintiff contends in its opposition.  *See* Pl. Opp. at 35.  In the paragraph of its Securities Act claims explaining how the offering materials for the two MetLife offerings allegedly were misleading, plaintiff makes no mention of any statements concerning MetLife's "mortality ratios" as a basis for its Securities Act claims.  *See* Compl. ¶¶ 220(a) & (b).  It long has been settled that "a party is not entitled to amend his pleading through statements in his brief," *Jacobson v. Peat, Marwick, Mitchell & Co.*, 445 F. Supp. 518, 526 (S.D.N.Y. 1977), as plaintiff attempts to do here.  In any event, the second amended complaint does not allege any actionable misstatement or omission with respect to MetLife's "mortality ratios" for the reasons discussed in the MetLife defendants' reply, which the Underwriter Defendants refer to and incorporate by reference.

## **CONCLUSION**

For the foregoing reasons and for the reasons set forth in their opening memorandum of law, the Underwriter Defendants respectfully request that the claims asserted against them in the second amended complaint be dismissed with prejudice and that the Court grant them such other and further relief as it may deem just and proper.

Dated:  New York, New York
       November 6, 2013

DLA PIPER LLP (US)

By:  /s/ Timothy E. Hoeffner

Timothy E. Hoeffner
timothy.hoeffner@dlapiper.com
John J. Clarke, Jr.
john.clarke@dlapiper.com
Constance Tse
constance.tse@dlapiper.com

1251 Avenue of the Americas
New York, New York 10020-1104
Tel.: (212) 335-4500
Fax: (212) 335-4501

Attorneys for Defendants
  Citigroup Global Markets Inc., Credit Suisse
  Securities (USA) LLC, Goldman, Sachs &
  Co., HSBC Securities (USA) Inc., Merrill
  Lynch, Pierce, Fenner & Smith Incorporated
  and Wells Fargo Securities, LLC

## **CERTIFICATE OF SERVICE**

I hereby certify that I am one of the attorneys for the underwriter defendants in this action and that on November 6, 2013, I caused a copy of the foregoing to be filed with the Court's ECF system, which will cause notice of its filing to be served electronically upon all counsel who have appeared in this action

                                          /s/ Timothy E. Hoeffner
                                            Timothy E. Hoeffner