UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
CITY OF WESTLAND POLICE AND FIRE
RETIREMENT SYSTEM, Individually and on Behalf of
All Others Similarly Situated,

                      Plaintiff,

         -against-

METLIFE, INC., et al.,

                    Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 8/28/2018

12 Civ. 0256 (LAK)

## MEMORANDUM AND ORDER

LEWIS A. KAPLAN, *District Judge.*

       The complaint in this securities class action[1] alleges that MetLife, Inc. ("MetLife" or the "Company") made false or misleading statements in respect of its financial performance and position because certain reserves underlying its financial statements failed to take proper account of incurred but not reported ("IBNR") death benefit claims with respect to group life insurance policies. Plaintiffs assert claims under Sections 10(b) and 20 of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 thereunder and claims under Sections 11, 12 and 15 of the Securities Act of 1933 (the "Securities Act"). Defendants are MetLife – a "leading global provider of insurance, annuities and employee benefit programs"[2] – as well as certain of its current and former officers and directors (the "Individual Defendants" and, together with MetLife, the "MetLife Defendants") and several securities firms that underwrote certain MetLife securities during the relevant period. The matter is before the Court on the MetLife Defendants' motion to dismiss the fourth amended complaint [DI 180] (the "FAC").[3]

---

[1]       The Court certified the class on September 22, 2017. DI 178 (endorsing DI 122). The class consists of "all persons who purchased or acquired MetLife, Inc. common stock in the Company's August 3, 2010 Offering or the Company's March 4, 2011 Offering."

[2]       Fourth Amended Complaint ("FAC") at ¶ 1.

[3]       The Court previously denied the MetLife Defendants' motion to dismiss the third amended complaint with respect to certain of plaintiffs' Securities Act claims. *City of Westland Police*

The Court assumes familiarity with its previous opinions in this case.  For present purposes, it suffices to say only the following.

The Social Security Administration Death Master File (the "SSA-DMF") is a "database of all deaths recorded in the United States."[4]  Plaintiffs allege that:

"MetLife used the SSA-DMF as early as the mid-1990s to identify – and to halt payments to – deceased annuity recipients, but that it did not then use the database to identify deceased persons whose lives were insured by MetLife ('life insureds'). It was not until 2007 . . that MetLife for the first time compared the SSA-DMF against its roster of individual – as opposed to group – life insureds in order to identify those individual insureds who had died but for whom death benefit claims had not been submitted. This cross-check allegedly uncovered $80 million in unclaimed individual life insurance benefits that were due to the deceased life insureds' beneficiaries or, in the absence of identifiable beneficiaries, to various states under abandoned property laws. (. . .)

"MetLife in 2007 increased IBNR reserves for its individual life insurance business by $25 million in order to account for unreported claims discovered during the 2007 SSA-DMF cross-check.

"MetLife . . . did not at that time 'cross-check the SSA-DMF against its roster of group life insureds – a cross-check that . . . would have exposed MetLife's IBNR reserves as inadequate. (. . .)

"MetLife and its officers, directors or representatives in the years that followed repeatedly and materially overstated the Company's financial condition and performance – including income, operating earnings, and earnings per share – as a result of MetLife's failure adequately to reserve for death benefits due to beneficiaries of group life insurance policies whose insureds the SSA-DMF identified as deceased but for whom MetLife had not received claims for benefits. These misstatements allegedly included, among other things, misleading (but more qualitative) assertions about MetLife's 'solid underwriting,' its 'disciplined approach

---

& Fire Ret. Sys. v. MetLife, Inc. (Westland III), No. 12-cv-0256 (LAK), 2016 WL 6652731, at *16 (S.D.N.Y. Nov. 10, 2016).  Although the notice of this motion states that the MetLife Defendants seek to dismiss the FAC in its entirety, their memorandum of law clarifies that MetLife Defendants specifically seek to dismiss the claims asserted under Sections 10(b) and 20(a) of the Exchange Act.  DI 181 at 1.  Accordingly, the rulings with respect to the Securities Act claims remain controlling, and the Court now addresses only defendants' arguments with respect to the Exchange Act claims.

[4]      FAC ¶ 4.

to risk and expense managements,' and its 'excellent mortality results' as well as assurances not only that its methods for fixing IBNR reserves complied with generally accepted accounting principles ('GAAP'), but also that such reserves were sufficient to cover future claims. . . . Central States alleges also that MetLife was too cavalier in dismissing as 'without merit' various state investigations into its accounting practices. One of the consequences of these alleged misstatements . . . is that MetLife stock traded at 'artificially inflated prices' during the Class Period. When those stock prices fell after MetLife's alleged misstatements came to light in August and October 2011, Central States says it suffered economic harm."[5]

In a memorandum opinion dated November 10, 2016, this Court granted in part and denied in part defendants' motions to dismiss plaintiffs' third amended complaint. In that opinion, the Court considered the following claims by Cental States:

"*First*, . . . that MetLife's financial statements were false or misleading because the amount of its allegedly inadequate reserves . . . necessarily was reflected in those statements.

"*Second*, . . . that MetLife made qualitative statements about its mortality results, its underwriting practices, and its approach to risk and expense management that were false [or] misleading in light of the alleged inadequacy of the Company's IBNR reserves. (. . .)

"[*Third*] . . . that MetLife falsely stated that investigations into its retained asset accounts were 'without merit' and failed timely to disclose the seriousness of state investigations into its death benefits payment practices – a failure that . . . violated, among other things, SEC Regulation S-K, Item 303."[6]

The Court "treat[ed] the first two categories of claims together because all of these claims are derivative of the same question: were MetLife's implicit representations regarding the adequacy of its IBNR reserves either (1) untrue statements of a material fact, or (2) omissions of a material fact that rendered the Company's financial statements throughout the Class Period misleading?"[7] As to this question, the Court concluded that "Central States alleged adequately that (1) MetLife did not actually believe that its IBNR reserves were adequate but nevertheless implied that they were, [and] (2) MetLife's implicit representations regarding the adequacy of its IBNR

---

[5]     *MetLife III* at *2-3 (footnotes omitted).

[6]     *Id.* at *9.

[7]     *Id.*

reserves did not rest on a meaningful inquiry."[8]  As to the third category of claims, the Court concluded that "MetLife omitted to state material facts about state investigations [concerning the Company's use of the SSA-DMF] that it had a duty to disclose under SEC Regulation S-K, Item 303."[9]

Although the Court concluded that plaintiffs sufficiently had alleged falsity to the extent described above, it nonetheless concluded that plaintiffs had failed to allege *scienter*.[10]  In doing so, the Court rejected plaintiffs' argument that the third amended complaint sufficiently alleged "that the MetLife Defendants 'indisputably had access to, yet consciously ignored, information' revealing the inadequacy of the Company's IBNR reserves, which rendered certain of its public statements false and misleading."[11]  The new allegations included in the FAC in substantial part focus on this theory of *scienter*.[12]  To that end, the FAC highlights several specific reports, communications, and documents which, plaintiffs argue, demonstrate that the MetLife defendants "had access to reports and knew information that was contrary to their Class Period representations."[13]

Upon review, the Court concludes as follows:

1.      The FAC sufficiently alleges that defendant MetLife and individual defendants C. Robert Henrikson, William J. Wheeler, Peter M. Carlson, and William J. Mullaney acted with *scienter* in misrepresenting the Company's financial performance to the extent described above insofar as such misrepresentations were made in December 2010 or thereafter.

2.      This Court has already concluded that "Central States adequately has pleaded that at least a portion of the decline in MetLife's share price from October 6 to October 7 was caused by the Company's announcement that it would take an after-tax charge of at least $115 million to increase its reserves in the wake

---

8

    *Id.* at *10.

9

    *Id.* at *11.

10

    *Id.* at *11-14.

11

    *Id.* at *12-13.

12

    *See* FAC at ¶¶ 88-90, 111-123.

13

    DI 186 at 3.

5

of its expanded use of the SSA-DMF."[14] The Court now concludes that these
losses are tied  sufficiently to the actionable misrepresentations for purposes
of Section 10(b) of the Exchange Act and Rule 10b-5 thereunder.

3.      The FAC sufficiently alleges also that the Individual Defendants, except for
Eduardo Castro-Wright, had "actual control" over the Company for purposes
of Section 20(a), substantially for the reasons stated in this Court's February
28, 2013 opinion in this case.[15]

On or before September 10, 2018, the parties shall submit an agreed form of order.
If they cannot agree on a form of order, they shall settle an order on notice.  Any notice of settlement
shall be served on or before September 17, 2018.

SO ORDERED.

Dated:        August 28, 2018

                                        /s/        Lewis A. Kaplan
                                        _____
                                            Lewis A. Kaplan
                                        United States District Judge

---

[14]    *City of Westland Police & Fire Ret. Sys. v. MetLife, Inc. (MetLife II)*, 129 F. Supp. 3d 48, 86-
87 (S.D.N.Y. 2015).

[15]    *City of Westland Police & Fire Ret. Sys. v. MetLife, Inc. (MetLife I)*, 928 F. Supp. 2d 705,
721 (S.D.N.Y. 2013).