UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------x
CITY OF WESTLAND POLICE AND FIRE         :
RETIREMENT SYSTEM, Individually and on   :
Behalf of All Others Similarly Situated, :
                                         :
                         Plaintiff,      :
                                         :
          vs.                            :
                                         :
METLIFE INC., et al.,                    :
                                         :
                         Defendants.     :
                                         :
---------------------------------------------------------------x

Civil Action No. 1:12-cv-00256-LAK

<u>CLASS ACTION</u>

REPLY IN SUPPORT OF LEAD PLAINTIFF
AND CLASS REPRESENTATIVE'S
MOTION TO EXCLUDE THE TESTIMONY
OF PROFESSOR ALLEN FERRELL

1548446_1

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ..................................................................................................................1

II. ARGUMENT .........................................................................................................................2

    A. Ferrell's Testimony Should Be Excluded Because His Conclusion that the Absence of Statistical Significance Proves Negative Causation Is Contrary to Law and Economic Principles ...........................................................................2

    B. Ferrell's Testimony on Heteroscedasticity Should Be Excluded Because It Rests on Confirmation Bias, Data Snooping and Unscientific Exogenous Variables ............................................................................................................5

    C. The Failure to Account for Leakage and Failure to Disaggregate Further Undermines Ferrell's Improper Statistical Significance Requirement ...................9

    D. Ferrell's Market Efficiency Opinion Rests on Mere Say So ................................10

III. CONCLUSION ....................................................................................................................10

# TABLE OF AUTHORITIES

Page

**CASES**

*Andrews v. Metro N. Commuter R.R. Co.*,
  882 F.2d 705 (2d Cir. 1989)......................................................................................................8

*Ark. Teachers Ret. Sys. v.Goldman Sachs Grp., Inc.*,
  879 F.3d 474 (2d Cir. 2018).......................................................................................................3

*Carpenters Pension Tr. Fund of St. Louis v. Barclays PLC*,
  310 F.R.D. 69 (S.D.N.Y. 2015) ..............................................................................................3, 4

*City of Westland Police & Fire Ret. Sys. v. MetLife, Inc.*,
  928 F. Supp. 2d 705 (S.D.N.Y. 2013).......................................................................................5

*City of Westland Police and Fire Ret. Sys. v. MetLife, Inc.*,
  2016 WL 6652731 (S.D.N.Y. Nov. 10, 2010).........................................................................2

*City of Westland Police and Fire Ret. Sys. v. MetLife, Inc.*,
  2018 WL 4179504 (S.D.N.Y. Aug. 28, 2018).........................................................................2

*Denny v. Westfield State Coll.*,
  669 F. Supp. 1146 (D. Mass. 1987),
  aff'd, 880 F.2d 1465 (1st Cir. 1989) .........................................................................................8

*Dura Pharm., Inc. v. Broudo*,
  544 U.S. 336 (2005)................................................................................................................10

*Estate of Hill v. ConAgra Poultry Co.*,
  1997 WL 538887 (N.D. Ga. Aug. 25, 1997) ...........................................................................8

*Fed. Hous. Fin. Agency for Nat'l Mortg.Ass'n v. Nomura Holding Am., Inc.*,
  873 F.3d 85 (2d Cir. 2017),
  cert. denied, _U.S._, 138 S. Ct. 2679 (2018) ......................................................................2, 3

*In re Barclays Bank PLC Sec. Litig.*,
  2017 WL 4082305 (S.D.N.Y. Sept. 13, 2017),
  aff'd, 2018 WL 6040846 (2d Cir. Nov. 20, 2018) ...................................................................4

*In re Barclays Bank PLC Sec. Litig.*,
  2018 WL 6040846 (2d Cir. Nov. 20, 2018)............................................................................4

*In re Countrywide Fin. Corp. Sec. Litig.*,
  588 F. Supp. 2d 1132 (C.D. Cal. 2008) ...............................................................................9, 10

1548446_1

Page

*In re Federal Home Loan Mortg. Corp (Freddie Mac) Sec. Litig.*,
  281 F.R.D. 174 (S.D.N.Y. 2012) ......................................................................................6, 8

*In re Novatel Wireless Sec. Litig.*,
  846 F.Supp 2d 1104 (S.D. Cal. 2012) ....................................................................................4

*In re Petrobras Sec.*,
  862 F.3d 250 (2d Cir. 2017)
  *petition for cert. filed*, No. 17-664 (U.S. Nov. 3, 2017) ........................................................3

*In re Vivendi, S.A. Sec. Litig.*,
  838 F.3d 223 (2d Cir. 2016) ..................................................................................................10

*Matrixx Initiatives, Inc. v. Siracusano*,
  2010 WL 4624148 (U.S. Nov. 12, 2010) ................................................................................3

*Matrixx Initiatives, Inc. v. Siracusano*,
  563 U.S. 27 (2011) ..............................................................................................................2, 3

*Olin Corp. v. Lamorak Ins. Co.*,
  2018 WL 1901634 (S.D.N.Y. Apr. 18, 2018) .........................................................................3

*Reyes v. Sofia Fabulous Pizza Corp.*,
  2014 WL 1744254 (S.D.N.Y. Apr. 24, 2014) .........................................................................4

*Rooney v. EZCORP, Inc.*,
  2019 WL 691205 (W.D. Tex. Feb. 19, 2019) .........................................................................3

*United States v. Jiau*,
  734 F.3d 147 (2d Cir. 2013) ...................................................................................................8

1548446_1

I.  **INTRODUCTION**

Allen Ferrell's ("Ferrell")[1] opinions should be excluded because they rest on a binary determination of causation that is contrary to law and is the product of a flawed methodology. His testimony rests on the false premise that the absence of a statistically significant price decline is dispositive on causation. *See, e.g.*, Ferrell Rpt., ¶17.[2] And, his opinions on the presence of heteroscedasticity rest on confirmation bias evidenced by his disregard of multiple tests that found it absent. MetLife, Inc.'s ("MetLife") opposition makes clear that to achieve his objective of concluding that plaintiffs have no damages, Ferrell has repeatedly altered his analysis and ignored qualitative evidence of causation. On this faulty foundation, Ferrell and MetLife claim, based on Ferrell's flawed event study, that there is no causal connection at all between MetLife's disclosure of the financial impact of its unclaimed property practices on October 6, 2011, in a Form 8-K and the immediate decline in its stock price based on the purported absence of statistical significance. Mot. at 7. That Form 8-K disclosure, however, revealed for the first time that the Company would need to increase its incurred but not reported ("IBNR") reserve, by $115 million – $135 million in connection with the Social Security Administration Death Master File ("SSA-DMF"). MetLife's stock price declined over 6% ($1.89 per share) the day after. Multiple analyst reports discussed MetLife's SSA-DMF charge and *Reuters* published of an article immediately after the

---

[1]  All citations herein to "Motion" or "Mot." are to plaintiff's Motion to exclude Ferrell (ECF No. 262). All citations to "Opposition" or "Opp." are to defendants' Opposition to plaintiff's Motion (ECF No. 320). All terms not otherwise defined herein have the same meaning as set forth in the Motion.

[2]  All citations herein to "Ferrell Rpt." are to the Report (ECF No. 266-1). All citations to "Ferrell Rbtl." are to the Rebuttal Report (ECF No. 266-3). All citations to "Amended Rbtl." are to the Amended Second Rebuttal (ECF No. 266-2) ("Exchange Act Report").

announcement noting that MetLife's stock "fell 2.8% to $29.83 in after-hours *trading on the news*."[3] These facts show the impact of MetLife's disclosures on its stock price and are consistent with Steven P. Feinstein's ("Feinstein") event study that finds MetLife's stock price decline on October 7, 2011, was statistically significant at the 95% confidence level. The market reaction to MetLife's October 6, 2011 disclosure further exposes the methodological flaw in Ferrell's exclusive reliance on statistical significance and underscores that his opinion must be excluded.

## II.   ARGUMENT

### A.   Ferrell's Testimony Should Be Excluded Because His Conclusion that the Absence of Statistical Significance Proves Negative Causation Is Contrary to Law and Economic Principles

Ferrell's testimony makes no mention that defendants bear the heavy burden of proof on negative causation. *Fed. Hous. Fin. Agency for Nat'l Mortg. Ass'n v. Nomura Holding Am., Inc.*, 873 F.3d 85, 138-39, 155 (2d Cir. 2017), *cert. denied*, _U.S._, 138 S. Ct. 2679 (2018). Ferrell's methodology for assessing the reliability of causation evidence only through a bright-line test of statistical significance conflicts with the Supreme Court's decision in *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27 (2011) which rejected "the premise that statistical significance is the only reliable indication of causation," noting that "regulators act on the basis of evidence of causation that is not statistically significant, it stands to reason that in certain cases reasonable investors would as

---

[3]   By improperly concluding the October 6, 2011 disclosure "only disclose[d] the amount of the reserve." Ferrell improperly excludes from his analysis the impact of the misrepresentations on MetLife's financial statements. Ferrell Rpt., ¶33. As the Court's August 28, 2018 decision made clear, the inadequacy of the Company's reserves remain in the case and are sufficiently tied to the actionable misrepresentations. *City of Westland Police and Fire Ret. Sys. v. MetLife, Inc.*, 2018 WL 4179504, at *3-*5 (S.D.N.Y. Aug. 28, 2018) ("August 28 Order") (noting that inadequacy of MetLife's IBNR reserves were adequately alleged); *see also City of Westland Police and Fire Ret. Sys. v. MetLife, Inc.*, 2016 WL 6652731 (S.D.N.Y. Nov. 10, 2010) ("November 10 Order") (noting that adequacy of reserves implicates the accuracy of financial statements). All citations and footnotes omitted and emphasis added unless otherwise indicated. All citations and footnotes omitted and emphasis added unless otherwise indicated.

well." *Id.*, at 40.[4]  MetLife's attempt to limit *Matrixx*'s analysis to medical testing is inapt as it ignores the Supreme Court's and the United States' broader rejection of a bright-line test of causation.[5]  *In re Petrobras Sec.*, 862 F.3d 250, (2d Cir. 2017) *petition for cert. filed*, No. 17-664 (U.S. Nov. 3, 2017) also recognized that a bright-line statistical significance requirement is improper: "Event studies offer the seductive promise of hard numbers and dispassionate truth, but methodological constraints limit their utility in the context of single-firm analyses. . . . Notably, small sample sizes may limit statistical power, meaning that only very large-impact events will be detectable." *Id.* at 278-79; *Rooney v. EZCORP, Inc.*, 2019 WL 691205, at *7 (W.D. Tex. Feb. 19, 2019) (same).[6]

Because Ferrell's testimony rests on the wrong legal standard, it must be excluded. Opp. at 6; *Olin Corp. v. Lamorak Ins. Co.*, 2018 WL 1901634, at *21 (S.D.N.Y. Apr. 18, 2018) (expert

---

[4]  The footnote in *Ark. Teachers Ret. Sys. v.Goldman Sachs Grp., Inc.*, 879 F.3d 474, 481 n.5 (2d Cir. 2018) referencing a law review does not endorse Ferrell's bright-line statistical significance requirement. Opp. at 4, 7-8. *Goldman* did not involve negative causation and it "espouse[d] no views" on whether the lack of price decreases following numerous press reports on the alleged misrepresentations sufficed to rebut the "*Basic* presumption." *Goldman*, 879 F.3d at 485-86. Indeed, the Second Circuit instructed the district court to consider whether defendants had established by a preponderance of the evidence a lack of price impact, an analysis that would be unnecessary under – and completely undermines – defendants' bright-line test. *Id.*

[5]  The United States' *amicus* brief in *Matrixx* stated that "[s]tatistical significance is not synonymous with practical significance," and that "causation can appropriately be inferred through consideration of multiple factors independent of statistical significance." *Matrixx Initiatives, Inc. v. Siracusano*, 2010 WL 4624148, at *13-*17 (U.S. Nov. 12, 2010). The Supreme Court agreed. *Matrixx Initiatives*, 563 U.S. at 40 (citing *Matrixx Initiatives*, 2010 WL 4624148, at *12).

[6]  MetLife's attempt to cabin *Petrobras* and *Barclays* to market efficiency (Opp. at 9) fails to counter the flaw both cases identify in a bright-line statistical significance requirement. *Petrobras*, 862 F.3d at 278-79; *Carpenters Pension Tr. Fund of St. Louis v. Barclays PLC*, 310 F.R.D. 69, 95 (S.D.N.Y. 2015). Similarly unavailing is MetLife's analysis of *Nomura*, which makes clear that Congress placed the heavy burden of proving loss causation to allocate the risk of uncertainty to defendants. *Nomura*, 873 F.3d at 138-39, 155. But Ferrell's methodology (which fails to detect all but very large-impact events) places the risk of uncertainty on plaintiffs. *Id.*; *see also Petrobras*, 862 F.3d at 278-79.

1548446_1

testimony is excludable if it applies the wrong legal standard). Much like defendant's expert in *In re Novatel Wireless Sec. Litig.*, 846 F.Supp 2d 1104 (S.D. Cal. 2012) who required evidence of loss causation to reveal the alleged fraud to a reasonable investor despite cases that made clear no such requirement existed, Ferrell improperly imposes a statistical significance requirement for evidence of loss causation to be reliable despite conflicting Supreme Court and Second Circuit authority. *Compare, Id.*, at 1108, *with* Ferrell Rpt., ¶¶16-17.[7]

Defendants' reliance on *In re Barclays Bank PLC Sec. Litig.*, 2018 WL 6040846, at *1 (2d Cir. Nov. 20, 2018) (summary order) cannot save Ferrell's unreliable methods and legally inadmissible conclusions.[8] This case is nothing like *Barclays* where plaintiffs did not even rebut defendant's expert's event study that showed a lack of market reaction following the relevant disclosures or conduct its own event study. *In re Barclays Bank PLC Sec. Litig.*, 2017 WL 4082305, at *18 (S.D.N.Y. Sept. 13, 2017), *aff'd*, 2018 WL 6040846 (2d Cir. Nov. 20, 2018); *Barclays*, 2018 WL 6040846, at *5. MetLife altogether ignores that, among the three corrective disclosures at play in *Barclays*, Judge Crotty noted that there were "two price ***increases***, and one immaterial drop of [$0.23]." *Barclays*, 2017 WL 4082305, at *20 (emphasis in original); *Barclays*, 2018 WL 6040846, at *5 ("simply put, the evidence shows virtually no market reaction – and certainly no statistically significant market reaction – to the revelation"). Finally, Judge Crotty found the alleged misrepresentations in *Barclays* had "'minimal materiality.'" *Barclays*, 2017 WL 4082305, at *21. The evidence here shows that MetLife discussed the estimated financial impact of a likely reserve

---

[7] MetLife's claim that Ferrell's opinion on the reliability of evidence is not legal ignores the legal connotations of "reliable" and "evidence." Opp. at 6 n.7.

[8] Summary orders "do not have precedential effect." 2d Cir. R. 32.1.1; *see also Reyes v. Sofia Fabulous Pizza Corp.*, 2014 WL 1744254, at *2 (S.D.N.Y. Apr. 24, 2014) (noting that a Second Circuit opinion was "a summary order and thus, by virtue of language printed right on the decision, 'DO[ES] NOT HAVE PRECEDENTIAL EFFECT'").

increase from the SSA-DMF at the highest echelons of the Company and MetLife's employees considered the financial impact from the state investigations to be material. *See, e.g.*, ECF No. 300-006 at 13 (Wheeler's presentation to the MetLife Board of Directors covers the estimated $100 million reserve adjustment in connection with SSA-DMF); ECF No. 302-006 at 9 (same update provided by Carlson (former Chief Accounting Officer) to Henrikson (former CEO)); ECF No. 300-007 at 5 (Wheeler (former CFO) discusses financial impact of SSA-DMF matching at the January 25, 2011 MetLife Board of Director's meeting); ECF No. 302-006. The earning impact for the Group Life and Individual Life products is material as expected."). Further, Feinstein's event study shows the October 7, 2011 stock price decline of $1.89 – constituting a 6% decrease – was statistically significant at the 95% confidence level. ECF No. 266-8 ¶71. The evidence here substantiates this Court's assessment on materiality which noted that "[h]ere, the alleged corrective disclosures included the announcement of a nationwide investigation into one of MetLife's important businesses and an increase in reserves that caused operating earnings for insurance products to be down 23% for the quarter. Plaintiff alleges that MetLife's shares dropped in value after the disclosures. This is sufficient." *City of Westland Police & Fire Ret. Sys. v. MetLife, Inc.*, 928 F. Supp. 2d 705, 719 (S.D.N.Y. 2013) ("February 28 Order").

> **B.  Ferrell's Testimony on Heteroscedasticity Should Be Excluded Because It Rests on Confirmation Bias, Data Snooping and Unscientific Exogenous Variables**

MetLife's Opposition makes clear that Ferrell inexplicably ignored multiple tests that he conducted which found heteroscedasticity absent. Ferrell ran multiple variations in the tests he performed and the Opposition admits that each of the four permutations Ferrell ran showed no

heteroscedasticity until Ferrell added the VIX index to his event study. Opp. at 12.[9] MetLife contends that Ferrell ran a single Breusch-Pagan test with multiple variations but its Opposition confirms that each of the four permutations Ferrell ran showed no heteroscedasticity until Ferrell added the VIX index to his event study to "confirm" the purported presence of heteroscedasticity. Opp. at 12. Further, MetLife's Opposition confirms that Ferrell's Exchange Act Report shifted from the Breusch-Pagan test to the White Test and an eyeball test. Opp. at 13-14. The multiple number and types of tests Ferrell ran (and disregarded) evidences confirmation bias and data-snooping. Mot. at 13-14. Consistent with Ferrell's initial tests, Feinstein found that the Breusch-Pagan – a commonly used test for detecting heteroscedasticity – shows no heteroscedasticity.[10] ECF No. 266-8, ¶¶41, 75, 78-80. Ferrell's Exchange Act Report abandoned the Breusch-Pagan test (which showed no heteroscedasticity without the addition of the VIX index) and switched to a subjective and accordingly unreliable visual inspection test alongside the White Test to purportedly "confirm" the presence of heteroscedasticity. Amended Rbtl., ¶¶20-22. This is exactly the type of shifting analysis that Judge Cedarbaum found subject to exclusion in *In re Federal Home Loan Mortg. Corp. (Freddie Mac) Sec. Litig.*, 281 F.R.D. 174, 181 (S.D.N.Y. 2012). Without shifting tests and adding the VIX index, Ferrell cannot conclude that heteroscedasticity is present – a necessary precursor for his contention that the price decline on October 7, 2011, was not statistically significant.

---

[9] MetLife's description of the Breusch-Pagan tests as a commonly used test for detecting heteroscedasticity echoes Feinstein's testimony. *Compare* Opp. at 12 *with* ECF No. 266-8, ¶41 ("To ensure that there was no heteroscedasticity present in my regression model, I ran the Breusch-Pagan test, which is a generally accepted diagnostic test that is commonly used for this purpose . . . there is no evidence [of heteroscedasticity.]").

[10] Feinstein's use of a GLS regression in *Fosbre v. Las Vegas Sands Corp.* (ECF No. 274-34), which involved an event study in a different case involving different facts and circumstances is irrelevant here where multiple formal diagnostic tests have confirmed heteroscedasticity is absent.

That said, data produced to MetLife on December 15, 2018, weeks ahead of Feinstein's scheduled deposition, showed that even the White Test Ferrell and MetLife tout also does not detect heteroscedasticity in Feinstein's event study. Mot. at 14 n.11. After plaintiff produced 14 files including a file titled, whiteHet.m – which showed that the White Test detected no heteroscedasticity – MetLife cancelled Feinstein's deposition. *Id.*[11] Despite multiple diagnostic tests that failed to detect heteroscedasticity, Ferrell insists that heteroscedasticity is present and may be divined by yet another test, this time a visual inspection, *i.e.*, eyeball test. MetLife's own authority makes clear that "[g]raphical examinations don't provide evidence of homoskedasticity or heteroscedasticity. They merely suggest independent variables that may be related to the variability of the error term." ECF No. 251-8 at 195. Indeed, Peter Kennedy's *A Guide to Econometrics*, which MetLife also cites, states:

> Before correcting for heteroskedasticity, each variable should be examined for possible transformations . . . that might be appropriate in the of the relationship in question. . . . More generally, the heteroskedasticity may be due to an omitted explanatory variable or an incorrect functional form, and because these problems are more serious than heteroskedasticity should always initially be interpreted as pointing to an omitted variable or a nonlinear functional form[.]

ECF No. 251-7, at 126. As detailed in plaintiff's opposition to the motion to exclude Feinstein, not only did Feinstein demonstrate that heteroscedasticity is not present, but MetLife-specific news are the "independent variables that may be related to the variability of the error term." ECF No. 334. at 12; ECF No. 251-8 at 195.

---

[11] MetLife's decision not to depose Feinstein after receiving test results confirming the absence of heteroscedasticity undermines its argument that the result of the White Test is a new opinion. It's not. *See* ECF No. 266-8, ¶41. Further, Ferrell raised the White Test and the eyeball test for the first time in his first amended rebuttal report on November 16, 2018, not one year earlier as MetLife implies. Opp. at 13. Ferrell's Exchange Act Report and first amended rebuttal report used alternative tests that were nowhere mentioned in his earlier reports.

MetLife claims that heteroscedasticity is so strong it would be obvious to a layperson. Opp. at 4. But despite MetLife's desire to "see" heteroscedasticity, the formal tests do not show it, rendering alternative testing unnecessary. Further, this argument underscores that Ferrell's eyeball test is impermissible lay testimony. *United States v. Jiau*, 734 F.3d 147, 154 (2d Cir. 2013) ("expert testimony that seeks to address 'lay matters which [the] jury is capable of understanding and deciding without the expert's help' is not relevant and is therefore inadmissible") (quoting *Andrews v. Metro N. Commuter R.R. Co.*, 882 F.2d 705, 708 (2d Cir. 1989)).[12]

Plaintiff is aware of no securities case where an expert was excluded based on heteroscedasticity and MetLife does not cite to any.[13] Even if heteroscedasticity was present – which it's not – case law supports using a regression despite its presence. MetLife claims that *Denny v. Westfield State Coll.*, 669 F. Supp. 1146 (D. Mass. 1987), *aff'd*, 880 F.2d 1465 (1st Cir. 1989) and *Estate of Hill v. ConAgra Poultry Co.*, 1997 WL 538887 (N.D. Ga. Aug. 25, 1997) are irrelevant. Opp. at 11. But both cases show that courts and journals accept regression-based econometric analyses despite the presence of heteroscedasticity. *Denny*, 669 F. Supp. at 1147-49; *ConAgra*, 1997 WL 538887, at *1, *5-*6.

---

[12] Similarly, Ferrell's opinion of whether the corrective disclosures or filings with the SEC included information that could not have been disclosed is inadmissible lay opinion. *See, e.g.*, Ferrell Rpt., ¶¶28, 30-31. Indeed, MetLife characterizes these as "common sense" statements. Opp. at 16.

[13] MetLife points to *Freddie Mac*, but that case is inapposite to MetLife's position here and, contrary to MetLife's Opposition, makes no mention of heteroscedasticity whatsoever. *Id.*, 281 F.R.D. at 179-80. In that case, a plaintiff's expert was excluded because the Court found his "analysis changed so many times in important ways and was so internally inconsistent that [the Court] found it unreliable and unpersuasive." *Id.* at 181.

1548446_1

### C. The Failure to Account for Leakage and Failure to Disaggregate Further Undermines Ferrell's Improper Statistical Significance Requirement

Contrary to Ferrell's academic work, which recognizes that truth may gradually trickle into the market rendering subsequent declines not statistically significant (ECF No. 266-4 at 7), both Ferrell and MetLife urge the Court to embrace a bright-line, all-or-nothing, statistical significance requirement for negative causation. Opp. at 4-9. Ferrell conveniently ignores his own published writing which recognizes that "while a single day's abnormal return may not be significant" where truth gradually trickles out, "the cumulative effect on the firm's stock over the entire corrective disclosure period may be." Mot. at 22. Despite MetLife's burden on negative causation, Ferrell failed to analyze whether the gradual trickling out of information concerning the state investigations impacted abnormal returns, further rendering his bright-line statistical significance requirement flawed.

Information about the potential financial impact of the state investigations trickled out after August 5, 2011 and before the October 6, 2011 disclosure. MetLife belatedly acknowledges that on August 9, 2011, a date where Ferrell finds a statistically significant decline and his report claimed no news about the alleged misrepresentations existed, an analyst for FBR Capital Markets, issued a note that discussed meeting with MetLife executives about the unclaimed property investigations. Ferrell's opinions have all ignored this analyst report on the state investigations. Ferrell Rbtl., ¶43. MetLife now claims that the FBR report contained no new information that could have caused the stock price decline but the fact that analysts were asking Mullaney about the topic highlights its importance. ECF No. 321-1 at 1, 9. Further, the *National Underwriter* published a September 3, 2011 article that discussed the State Investigations aim of reclaiming all unclaimed death benefits that have accumulated over the last several decades. Mot. at 24-25. As the court in *In re*

*Countrywide Fin. Corp. Sec. Litig.*, 588 F. Supp. 2d 1132 (C.D. Cal. 2008) noted, where corrective information slowly leaks, it makes it likelier that other variables will confound loss causation. *Id.* at 1200. Accordingly, Ferrell's testimony should be excluded for failing to take leakage into account and to disentangle its effects, especially because MetLife bears the burden on negative causation and "to show loss causation, it is enough that the loss caused by the alleged fraud results from the 'relevant truth . . . leak[ing] out.'" *In re Vivendi, S.A. Sec. Litig.*, 838 F.3d 223, 261 (2d Cir. 2016) (quoting *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 342 (2005)).

### D.    Ferrell's Market Efficiency Opinion Rests on Mere Say So

The entirety of Ferrell's market efficiency analysis consists of pointing to the Complaint's allegations alongside MetLife's substantial daily volume on the New York Stock Exchange ("NYSE") and extensive analyst coverage. Ferrell Rpt., ¶29 nn.33-34. The parties' stipulation on market efficiency (which occurred subsequent to Ferrell's report) has nothing to do with Ferrell's failure to conduct a meaningful analysis of market efficiency.

### III.    CONCLUSION

For the foregoing reasons, plaintiff respectfully requests that the Court exclude Ferrell's opinions.

DATED: April 5, 2019					Respectfully submitted,

							ROBBINS GELLER RUDMAN
							  & DOWD LLP
							SHAWN A. WILLIAMS
							AELISH M. BAIG
							DANIEL J. PFEFFERBAUM
							JASON C. DAVIS
							ARMEN ZOHRABIAN


							          s/ Daniel J. Pfefferbaum
							_____
							    DANIEL J. PFEFFERBAUM

Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA  94104
Telephone:  415/288-4545
415/288-4534 (fax)
shawnw@rgrdlaw.com
aelishb@rgrdlaw.com
dpfefferbaum@rgrdlaw.com
jdavis@rgrdlaw.com
azohrabian@rgrdlaw.com

ROBBINS GELLER RUDMAN
  & DOWD LLP
ROBERT M. ROTHMAN
58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)
rrothman@rgrdlaw.com

Lead Counsel for Plaintiffs

<u>CERTIFICATE OF SERVICE</u>

I hereby certify under penalty of perjury that on April 5, 2019, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses on the attached Electronic Mail Notice List, and I hereby certify that I caused the mailing of the foregoing via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

                                                s/ Daniel J. Pfefferbaum
DANIEL J. PFEFFERBAUM

ROBBINS GELLER RUDMAN
    & DOWD LLP
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA  94104
Telephone:  415/288-4545
415/288-4534 (fax)
E-mail:  dpfefferbaum@rgrdlaw.com

1548446_1

## Mailing Information for a Case 1:12-cv-00256-LAK City of Westland Police and Fire Retirement System v. Metlife, Inc. et al

### Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **John Norman Bolus**
  jbolus@maynardcooper.com,jatkinson@maynardcooper.com

- **John J. Clarke , Jr**
  john.clarke@dlapiper.com,DocketingNewYork@dlapiper.com

- **Richard J. Davis**
  rdavis@maynardcooper.com,emcpherson@maynardcooper.com

- **Elliot Greenfield**
  egreenfield@debevoise.com,rashanies@debevoise.com,dbrockner@debevoise.com,dimamura@debevoise.com

- **Daniel C Harkins**
  daniel.harkins@dlapiper.com,DocketingNewYork@dlapiper.com,new-york-docketing-7871@ecf.pacerpro.com

- **Maeve L. O'Connor**
  moconnor@debevoise.com,mao-ecf@debevoise.com,dbrockner@debevoise.com

- **Daniel J. Pfefferbaum**
  dpfefferbaum@rgrdlaw.com

- **Darren J. Robbins**
  e_file_sd@rgrdlaw.com

- **Robert M. Rothman**
  rrothman@rgrdlaw.com,e_file_ny@rgrdlaw.com,9858910420@filings.docketbird.com,e_file_sd@rgrdlaw.com

- **John Vukelj**
  john.vukelj@dlapiper.com,john-vukelj-8235@ecf.pacerpro.com,DocketingNewYork@dlapiper.com,new-york-docketing-7871@ecf.pacerpro.com

- **Shawn Anthony Williams**
  swilliams@rgrdlaw.com,ptiffith@rgrdlaw.com,AFrame@rgrdlaw.com,tcraig@rgrdlaw.com,2028828420@filings.docketbird.com,aelishb@rgrdlaw.com,smorris@rgrdl

- **Armen Zohrabian**
  azohrabian@rgrdlaw.com,kmccormack@rgrdlaw.com,8791790420@filings.docketbird.com

- **Jason Allen Zweig**
  jasonz@hbsslaw.com,chavayh@hbsslaw.com,nicolleg@hbsslaw.com

### Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

```
Thomas           C. Michaud
,
```