UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------x
CITY OF WESTLAND POLICE AND FIRE RETIREMENT
SYSTEM, etc.,

                          Plaintiff,

      -against-                                         12-cv-0256 (LAK)

METLIFE, INC., et al.,

                          Defendant(s).
------------------------------------------------x

## MEMORANDUM AND ORDER

LEWIS A. KAPLAN, *District Judge.*

        This is a securities class action that has been litigated for almost nine years. Earlier this year, the Court approved a settlement of $84 million. Lead counsel Robbins Geller Rudman & Dowd LLP ("Robbins Geller") now seeks attorneys' fees of $21 million, or 25 percent of the settlement, and litigation expenses of $1,856,169.03, plus interest on both amounts.[1] Lead plaintiff Central States, Southeast and Southwest Areas Pension Fund also seeks an award of $10,880 "in recognition of the time and resources it spent representing the classes since this case began in 2012."[2] Familiarity with all prior proceedings is assumed.

---

[1] Dkt. 408 at 3.

[2] *Id.* at 32.

*I.     Attorneys' Fees*

Federal Rule of Civil Procedure 23(h) allows the Court to "award reasonable attorney's fees and nontaxable costs" in a certified class action. What is "reasonable" is left to the discretion of the Court, which is "intimately familiar with the nuances of the case."[3] In exercising that discretion, the Court acts as a fiduciary for the class, which it must protect from excessive awards.[4] Counsel bear the burden of establishing the reasonableness of their requested fee award.[5]

The Court may evaluate the reasonableness of a fee request using either the percentage of the fund obtained for the class or the lodestar method.[6] The latter, which the Court employs here, requires the Court to compute a reasonable lodestar amount. To do this, the Court first ascertains "the number of hours reasonably billed to the class," and then multiplies that figure by "an appropriate hourly rate.[7] That figure then may be increased by applying an appropriate multiplier. The Court's analysis is guided by the six factors that the Second Circuit described in *Goldberger v. Integrated Resources*: (1) counsel's time and labor, (2) the litigation's magnitude and complexity, (3) the risk of the litigation, (4) the quality of representation, (5) the requested fee in

---

[3] *In re Bolar Pharm. Co. Sec. Litig.*, 966 F.2d 731, 732 (2d Cir. 1992) (per curiam).

[4] *City of Detroit v. Grinell Corp.*, 560 F.2d 1093, 1099 (2d Cir. 1977), abrogated on other grounds by *Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43 (2d Cir. 2000).

[5] *Cruz v. Local Union No. 3 of Int'l Bhd. Of Elc. Workers*, 34 F.3d 1148, 1160 (2d Cir. 1994).

[6] *See Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005).

[7] *Goldberger*, 209 F.3d at 47.

3

relation to the settlement, and (6) public policy considerations.[8]

Counsel initially submitted a proposed lodestar of $11,558,816 based on 20,443 hours of work by many individuals, including 24 lawyers and unspecified numbers of paralegals, document clerks, shareholder relations staff, and others.[9] Counsel based their calculation on the timekeepers' current hourly rates, which alone may have overstated it given the lengthy duration of this case and the likelihood that the firm's rates increased over the years. Moreover, the lodestar was accompanied by virtually no information about the nature of the work performed in connection with the hours for which compensation was sought.

At the Court's request, counsel provided a restated lodestar based on blended historic hourly rates, which reduced the lodestar to $10,065,697.[10] Additionally, counsel provided the Court with information including (1) each timekeeper's hours, tasks, and current and blended hourly rates, (2) the categories of work for which compensation is sought, (3) biographical information for the individuals for whom compensation is sought, and (4) additional facts supporting the reasonableness of the hourly rates, including market rates for similar professionals.[11] This information revealed that counsel were seeking compensation for time billed by 101 timekeepers, including 18 attorneys,[12] two

---

[8] *Id.* at 50.

[9] Dkt. 413-2.

[10] Dkt. 427-5.

[11] Dkt. 427.

[12] Included in this group of attorneys are 8 partners, three counsel, and seven associates. Dkt. 427-5.

staff attorneys, four project attorneys, one law clerk, 32 paralegals, nine litigation support staff, and 35 nonlegal support staff. The nonlegal support staff included forensic accountants, forensic accounting interns, economic damage analysts, research analysts, an "investigator," document clerks, and "shareholder relations" professionals.

*A.    The Hourly Rates*

As an initial matter, the Court finds that counsel have not shown that it was appropriate to include the hourly rates of the 35 nonlegal support staff in the calculation of the lodestar. Collectively, these support staff billed approximately 3,098.6 hours at blended historic hourly rates ranging sharply from $60 to $518 per hour, which, at the higher end, is more than many of the firm's associates were billed out at. The total amount included for the support staff was $994,774.60.

Hourly rates of paralegals and other non-lawyers may be included in the lodestar "if . . . consistent with market rates and practices."[13] Counsel have not provided data on the hourly rates charged by other firms for such personnel, assuming that other firms charge for them on an hourly basis. Nor have they furnished any information regarding the practices of the Bar concerning "forensic accountants," "analysts," "investigators," "document clerks," and "shareholder relations" professionals.[14] Indeed, the work of these types of professionals, "like that of others 'whose labor

---

[13] *See Missouri v. Jenkins by Agyei*, 491 U.S. 274, 286 (1989); *U.S. Football League v. Nat'l Football League*, 887 F.2d 408, 416 (2d Cir. 1989).

[14] The Court notes that, with respect to the forensic accountants, analysts, and investigator in particular, the hourly fees paid to these individuals likely are redundant given that counsel hired at least three forensic accounting and economic firms to provide it with expert and consultant work. *See* Dkt. 413 at 3-5. The cost of these firms is accounted for in counsel's

5

contributes to the work product,' is likely 'included in calculation of the lawyers' hourly rates,' as ordinarily is true of other overhead costs like rent, firm administrative staff, and the like."[15] Accordingly, the Court will not include the total amount billed for these personnel in the lodestar calculation. As will be seen, however, it does take their contribution into account when determining the multiplier that is applied to the fees for the attorneys and legal support staff.

The Court next moves to determining whether the hourly rates for the remaining timekeepers – the attorneys, staff attorneys, project attorneys, paralegals, litigation support professionals, and law clerk – were appropriate. Based on counsel's submissions, the Court finds that the hourly rates for the attorneys and staff attorneys were appropriate, but that the hourly rates for the paralegals, litigation support personnel, law clerk, and project attorneys were not.

Counsel submitted an analysis by Professor William B. Rubenstein that compared counsel's blended historic hourly rates for attorneys, staff attorneys, and paralegals to four independent sets of empirical data regarding market rates charged by similar professionals.[16] According to Professor Rubenstein, counsel's hourly rates for its attorneys (which ranged from $170 to $1,058 per hour) and staff attorneys (which ranged from $362 to $366 per hour) generally are between 6 and 19 percent lower than the hourly rates charged by similar professionals in comparable

---

separate expenses award.

[15] *Rudman*, 2018 WL 3594828, at *5 (quoting *W. Virginia Univ. Hosps. v. Casey*, 499 U.S. 83, 99 (1991), *superseded by statute, Landgraf v. USI Film Prods., et al.*, 511 U.S. 244 (1994)).

[16] Dkt. 427-8 at 2. Professor Rubenstein compared counsel's hourly rates to the hourly rates charged by (1) class action firms litigating cases in this district, (2) class action firms litigating cases in the Northern District of California (adjusted to the New York market), (3) large private firms in the New York market, and (4) the primary defense firm in this matter, Debevoise & Plimpton LLP.

6

class actions, including class actions in this district.[17] Moreover, counsel's hourly rates for its attorneys and staff attorneys are between 34 percent and 50 percent lower than the hourly rates charged for similar professionals by large private firms in the New York market.[18] These conclusions support a finding that counsel's hourly rates for its attorneys and staff attorneys are in line with "the prevailing market rates 'for comparable attorneys of comparable skill and standing in the pertinent legal community,'"[19] and therefore properly are included in the lodestar.

Regarding counsel's blended historic hourly rates for paralegals (which ranged from $265 to $350 per hour), Professor Rubenstein concluded that these rates were modestly higher than the median blended rate for other comparable class action firms (approximately 4.1 percent higher) and modestly lower (approximately 4.5 percent lower) than the median blended rate charged for paralegals by large private firms in New York.[20] It is well known that paralegals, at least in New York, customarily are billed by law firms for their time at hourly rates.[21] But courts in this district typically cap their hourly rates at $150 to $200 per hour.[22] Taking both the authority in this district

---

[17] *Id.* at 2-3.

[18] *Id.* Professor Rubenstein's analysis evaluated attorneys and staff attorneys separately. *See id.* ¶ 30.

[19] *Goldberger*, 209 F.3d at 56 (quoting *Kirsch v. Fleet Street, Ltd.*, 148 F.3d 149, 172 (2d Cir.1998)); *see also Vista Outdoor Inc. v. Reeves Fam. Tr.*, No. 16-cv-5766, 2018 WL 3104631 (JSR), at *6 (S.D.N.Y. May 24, 2018) (finding reasonable hourly rates of $1,165 to $1,260 per hour for partners and $569 to $753 per hour for associates).

[20] Dkt. 427-8 at 3.

[21] *See, e.g., Rudman*, 2018 WL 3594828, at *5.

[22] *Vista Outdoor Inc*, 2018 WL 3104631, at *7 (collecting cases).

7

and Professor Rubenstein's analysis into consideration, the Court will cap the paralegals' hourly rates at $200 per hour, which reduces the total cost charged for them from $768,853.15 to $508,890.

Professor Rubenstein did not analyze counsel's blended historic hourly rates for litigation support personnel (which ranged from $150 to $375 per hour) or for the law clerk ($295 per hour), who was a law student at the University of California, Hastings College of Law.[23] Nevertheless, courts in the Second Circuit have found that the hourly rates for litigation support personnel and law clerks should be comparable to the hourly rates for paralegals.[24] Accordingly, the Court likewise caps the hourly rates for the litigation support personnel and the law clerk at $200 per hour, which reduces the total cost charged for them from $252,661.70 to $226,615.70.

Counsel have not made any showing of reasonableness with respect to the hourly rates of its project attorneys. The project attorneys apparently were not employed by the firm but were contracted in March and April 2019 to perform "document review services . . . as the parties were briefing summary judgment and preparing the proposed pretrial order."[25] In connection with these seemingly limited tasks, the project attorneys invested 510.4 hours at rates ranging from $390 to $425 per hour, which amounted to $211,433.50. Particularly because these attorneys were not employees of Robbins Geller, the Court finds that their hourly rates – which are more than the firm

---

[23] Dkt. 427-7 at 5.

[24] *See Abraham v. Leigh*, No. 17-cv-5429 (KPF), 2020 WL 5512718, at *10-*11 (S.D.N.Y. Sept. 14, 2020), *reconsideration denied*, No. 17-cv-5429 (KPF), 2020 WL 5836511 (S.D.N.Y. Oct. 1, 2020); *In re KeySpan Corp. Sec. Litig.*, No. 01-cv-5852 (ARR), 2005 WL 3093399, at *15 (E.D.N.Y. Sept. 30, 2005) (collecting cases).

[25] Dkt. 427-7 at 4.

charged for some of its associates – were neither reasonable nor efficient.[26] But perhaps more importantly, the Court finds that over 500 hours and $200,000 is an excessive amount of time and money to spend on document review in connection with two discrete tasks that occurred after discovery was closed. Accordingly, the Court reduces the total charge for the project attorneys by 50 percent, which decreases the total charge for these attorneys to $105,716.75.[27]

### B. Hours Billed

The Court now addresses whether the number of hours for which counsel request compensation is reasonable. Removing the hours billed by the support staff, counsel seek compensation for approximately 17,344.4 hours of work. According to counsel, the majority of this time was spent on the following categories of work: document review, discovery, "litigation strategy & analysis," and "other pleadings, briefs and pretrial motions."[28]

The Court notes at the outset that counsel appropriately expended a significant amount of time and labor litigating this class action. Over the course of almost nine years, they have, among other things, amended the complaint four times, opposed four motions to dismiss, reviewed

---

[26] *See, e.g., In re Citigroup Inc. Sec. Litig.*, 965 F. Supp. 2d 369, 395 (S.D.N.Y. 2013)("Courts seem to agree that a contract attorney's status as a contract attorney—rather than being a firm associate—affects his market rate. Even the authority on which Counsel relies presumes that clients generally pay less for the work of contract attorneys than for that of firm associates.") (citing *In re WorldCom, Inc. Sec. Litig.*, No. 02-cv-3288(DLC), 2004 WL 2591402, at *21 n. 48 (S.D.N.Y. Nov. 12, 2004) (finding use of contract attorneys justified because hiring them "was a far more efficient way of proceeding than giving the task to more highly compensated counsel").

[27] *See In re Citigroup Inc. Sec. Litig.*, 965 F. Supp. 2d at 399.

[28] Dkt. 427-6.

9

more than 837,000 pages of discovery, obtained certification of the class, took and defended a total of 15 fact and expert depositions, litigated motions for summary judgment, filed a proposed joint pretrial order, prepared for trial, and participated in three in-person mediation sessions.[29]

Nevertheless, certain of the above categories give the Court pause. First, even after removing the hours billed by the non-legal support staff, counsel assert that they spent approximately 2,199.7 hours on discovery and 3,701.25 hours on document review. Though discovery in this case was substantial, the Court finds these numbers to be excessive and redundant. The number of fact depositions in this case was relatively small, and counsel drafted and responded to only a handful of document requests and interrogatories.[30] Moreover, though counsel assert that a significant portion of their discovery work was spent on "review[] and analy[sis]" of documents,[31] document review is accounted for – extensively – in its own separate category of hours. These assertions strongly imply a certain amount of duplication and/or inefficiency in connection with these two categories.

Second, the Court is concerned by the "litigation strategy & analysis" category, on which counsel assert that they spent approximately 2,298.3 hours (removing the hours billed by the support staff). About 80 percent of the hours in this category were recorded by just one associate

---

[29] Dkt. 408 at 25-26.

[30] *See generally* Dkt. 409 ¶¶ 39-68 (describing counsel's discovery work). According to counsel, their discovery work included participating in "dozens of hours in meet-and-confer discussions," "review[ing] and analy[zing]" documents produced by defendants, preparing for 12 fact depositions, responding to one set of document requests and two sets of interrogatories, and drafting three sets of document requests, two sets of interrogatories, and a number of third-party subpoenas.

[31] *See id.* ¶¶ 44, 47, 52, 54, 57, 67, 68

at a blended hourly rate of $563 per hour.[32] Counsel provide no explanation for this, leaving the Court to guess regarding what "strategy & analysis" an associate attorney engaged in for many hundreds of hours. Such an indefinite showing cannot suffice to support the reasonableness of the hours expended on this category.

The Court finds that the simplest way to account for the vagueness and redundancy of the timekeeping in these three categories is to employ a 10 percent across the board reduction of counsel's lodestar, which the Court will employ after the reductions described above regarding hourly rates are rendered.[33] Applying all of these reductions, counsel's revised aggregate lodestar is $7,811,276.85.

C. *Multiplier*

The Court finds that a multiplier of 2.5 is reasonable here, which is well within the range of multipliers that typically are approved in this Circuit.[34] Such a multiplier amply accounts for the time value of money and the nine-year delay in counsel's payment. Additionally, a multiplier

---

[32] Dkt. 427-6 at 2.

[33] *See Kirsch*, 148 F.3d at 173 ("Hours that are 'excessive, redundant, or otherwise unnecessary,' are to be excluded, and in dealing with such surplusage, the court has discretion simply to deduct a reasonable percentage of the number of hours claimed 'as a practical means of trimming fat from a fee application.'" (citation omitted)); *Lunday v. City of Albany*, 42 F.3d 131, 134 (2d Cir. 1994) ("We do not require that the court set forth item-by-item findings concerning what may be countless objections to individual billing items.").

[34] *See, e.g., In re Nortel Networks Corp. Sec. Litig.*, 539 F.3d 129, 134 (2d Cir.2008) (holding that a $34 million fee representing a 2.04 multiplier was "toward the lower end of reasonable fee awards"); *Wal–Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 123 (2d Cir.2005) (multiplier of 3.5 approved on appeal).

11

of 2.5 adequately accounts for the risk of this litigation, the complexity of the issues, the contingent nature of the engagement, the skill of the attorneys on both sides – which was commendable – as well as the efforts of the many support staff who contributed to counsel's success. After almost nine years of hard-fought litigation, counsel obtained a settlement that represented approximately 32 percent of lead plaintiff's estimated probable damages.[35] This was a good result for the class and counsel deserve to be compensated adequately.[36]

Applying the 2.5 multiplier to the Court's revised aggregate lodestar, counsel's fee award is $19,528,192.10. This is in line with what other courts have awarded in connection with similarly-sized settlements.[37]

## II. Expense and Lead Plaintiff Award

Counsel seek also reimbursement for $1,856.169.03 in expenses.[38] The majority of the expenses are attributable to the retained experts and consultants, travel, and the required class action notices. Others include mediation fees, filing fees, deposition and transcript fees, legal research expenses, eDiscovery expenses, and photocopy costs. The Court finds nothing objectionable

---

[35] Dkt. 409 ¶ 123.

[36] *See In re Hi-Crush Partners L.P. Sec. Litig.*, No. 12-cv-8557 (CM), 2014 WL 7323417, at *17-18 (S.D.N.Y. Dec. 19, 2014).

[37] *See, e.g., In re J.P. Morgan Stable Value Fund ERISA Litig.*, No. 12-cv-2548 (VSB), 2019 WL 4734396, at *1 (S.D.N.Y. Sept. 23, 2019) (awarding 33.33 percent of a $75 million settlement).

[38] *See* Dkt. 413.

12

and grants this request.

Finally, lead plaintiff requests an award of $10,880 in recognition of the time and resources it spent on this litigation. The Court finds this unnecessary and denies this request.[39]

*Conclusion*

Lead counsel's application for attorneys' fees is granted in accordance with the following: lead counsel are awarded $19,528,192.10 in attorneys' fees and $1,856.169.03 in expenses. Interest is deemed as inappropriate in light of the generous multiplier applied to the adjusted lodestar. Lead plaintiff's request for an award of $10,880 is denied. The Clerk shall terminate Dkt. 407.

SO ORDERED.

Dated:   June 15, 2021

_____
Lewis A. Kaplan
United States District Judge

---

[39] *See City of Providence v. Aeropostale, Inc.*, No. 11-cv-7132 (CM) (GWG), 2014 WL 1883494, at *19 (S.D.N.Y. May 9, 2014), *aff'd sub nom. Arbuthnot v. Pierson*, 607 F. App'x 73 (2d Cir. 2015) (commenting that it is unclear "why a party who chooses to bring a lawsuit should be compensated for time expended in appearing at a deposition taken in order to insure that he is actually capable of fulfilling his statutory obligations, or responding to document requests, or performing what are essentially duplicative reviews of pleadings and motions that his lawyers are perfectly capable of reviewing for him.").